[Cite as *In re I.T.*, 2016-Ohio-555.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: I.T.

C.A. Nos.    27513
                     27560
                     27581

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 14-01-0011

DECISION AND JOURNAL ENTRY

Dated: February 17, 2016

WHITMORE, Judge.

{¶1}    Appellant, Robert T. ("Father"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated his minor child, I.T., to be dependent and placed him in the temporary custody of the Summit County Children Services Board ("CSB"). This Court affirms.

I

{¶2}    Father and Ashley H. ("Mother") are the parents of I.T., born January 2, 2014. CSB became involved with the family based upon early concerns that (1) both parents had bipolar disorder, (2) Father had a history of sexually abusing children, and (3) Mother had not been on her bipolar medication since she became pregnant. On January 8, 2014, CSB filed a complaint alleging that I.T. was a dependent child under R.C. 2151.04(B), (C), and (D). The complaint asserted that both parents have mental health issues, and that Father lacks parenting

knowledge, is cognitively delayed, and has a history of sexual abuse of children. In addition, the agency claimed that each parent has two more children with other partners that are not in the custody of either parent. The agency sought protective supervision of I.T. while he remained in Mother's care, but also requested that Father vacate the home. The magistrate ordered that Father vacate the home and have no contact with the child unless such contact is supervised and arranged by CSB. Although Father disputed the factual allegations of the complaint, he agreed to vacate the home and have no unsupervised contact with I.T.

{¶3} The adjudicatory hearing began on February 5, 2014. It was continued to March 6, 2014 solely to address the results of a John Doe posting. The account of the adjudicatory hearing thus reflects testimony from the February 2014 hearing. Following the taking of evidence, the magistrate dismissed the R.C. 2151.04(D) allegation, but found that I.T. was dependent under R.C. 2151.04(B) and (C).

{¶4} Father filed objections to the magistrate's findings. Upon consideration of the objections, the trial court dismissed the allegation under R.C. 2151.04(B), but adopted the finding that I.T. was dependent under R.C. 2151.04(C). The trial court found that Father posed a safety risk to I.T. and showed very little understanding of childhood development. The court also found that Mother was very reliant on Father. There was evidence before the trial court that the parents had violated the orders restricting Father's access to the child.

{¶5} On March 5, 2014, one day before the scheduled continuation of the adjudicatory hearing, CSB sought emergency temporary custody of I.T., believing the child to be at risk of harm for several reasons that were supported by an affidavit of the caseworker. The agency was concerned that: (1) Father was staying at the home despite the court order prohibiting him from having unsupervised contact with I.T.; (2) Father recently left two abusive voice mail messages

for the caseworker; (3) Father had a history of referrals for sexual abuse regarding multiple children and had lost custody of two of his other children; and (4) the home is unsanitary and unsafe due the smell of cat urine, cat feces all over the floor, and cigarette smoking in the home despite the presence of paternal grandmother's oxygen tank. The magistrate granted emergency temporary custody of the child to CSB and set the matter for a shelter care hearing on the following day.

{¶6} On March 6, 2014, the trial court addressed the John Doe posting and then conducted the shelter care hearing for the emergency removal of I.T. from the home. During the shelter care hearing, Caseworker Tammie Sumpter testified regarding the condition of the home. She explained that a social worker assistant had visited the home twice to supervise visits and reported a strong odor of cat urine and the presence of cat feces. As a result, Ms. Sumpter and her supervisor went to the home and found it to be "disturbing." The caseworker described seeing a small room adjacent to the kitchen which had six overturned litter boxes and a floor covered by cat feces. She also observed a man smoking a cigarette within six feet of an oxygen tank that was used by the paternal grandmother who resided there. The caseworker informed the smoker to stop because it was very dangerous. Nevertheless, another worker visited the home within a week, and found a man, later identified as Father, to be smoking a cigarette in the home. He was advised of the safety hazard.

{¶7} Regarding disposition, the parents waived hearing and agreed to an order of temporary custody to the agency. At the same time, the trial court adopted a case plan with which all parties expressed agreement. Mother was to complete a mental health assessment and follow all recommendations. Father was to complete a parenting class and be able to demonstrate the knowledge and skills learned. Because Father had previously begun a parenting

class in the case involving one of his older children, the parties agreed that such parenting class would be considered in this case. Further, Father was to complete a parenting evaluation and because he had previously completed a parenting evaluation for the other case, the current case plan indicated that he would sign releases for that parenting evaluation to be given to his counselor and to CSB. The case plan also required Father to complete mental health counseling, addressing the matters of concern outlined in the parenting evaluation. Finally, the case plan required Father to complete a substance abuse evaluation and follow all recommendations, including random drug tests. Because Father had already completed a substance abuse evaluation in the other case, the parties agreed that that evaluation could be utilized in the current case. Father has appealed from the judgment of the trial court and has assigned five errors for review.

II

Assignment of Error Number One

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING THE MINOR CHILD DEPENDENT WHEN THE VENUE REQUIREMENTS HAD NOT BEEN MET.

{¶8} Father argues that the trial court erred in finding I.T. dependent because venue had not been properly established. Father claims that CSB failed to present any evidence of the location or residence of either parent or of the child at the adjudication, and there was no evidence that the acts or omissions which constituted dependency took place in Summit County. Father claims this is fatal to the trial court's jurisdiction.

{¶9} Notwithstanding the fact that Father failed to bring this matter to the attention of the trial court until he lodged objections to the magistrate's decision, we note that the Ohio Supreme Court has recently held that the venue provisions in Juv.R. 10 and R.C. 2151.27 are

directory and not mandatory. *In re Z.R.*, 144 Ohio St.3d 380, 2015-Ohio-3306, ¶ 26. The Supreme Court also explained that "the failure to satisfy the venue provisions of R.C. 2151.27(A)(1) in a dependency complaint would not remove a juvenile court's jurisdiction over the case, and dismissal would not be proper on those grounds." *Id.* Consequently, Father's first assignment of error is overruled.

Assignment of Error Number Two

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ADMITTING [CSB] EXHIBIT 1.

**{¶10}** CSB Exhibit 1 consists of the "complaint, journal entries, and orders" from the juvenile court cases involving Father's two other children. (*In re S.T.*, Summit C.P., Juv.Div., No. DN08-07-612, and *In re K.T.*, Summit C.P., Juv.Div., No. DN12-11-732). Father asserts that Exhibit 1 was improperly admitted because it was not properly certified, contains inadmissible hearsay in the form of claims within the motion for permanent custody, and is not relevant to the present case. We will address each of these arguments in turn.

**{¶11}** First, Father claims the exhibit included documents not certified by the clerk. Specifically, Father complains of the inclusion of a motion for permanent custody of S.T., an older child of Father, within the certified materials apparently based on the fact that the exhibit was labeled as "complaint, journal entries, and orders." However, Father does not dispute that the permanent custody motion was, in fact, filed in that case, and he does not point to any specific prejudice due to the inclusion of the document per se. Consequently, the argument is overruled.

**{¶12}** Second, Father claims the exhibit contains impermissible character evidence and does not fall within the exception of Evid.R. 404(B). In response to Father's objection to the ruling of the magistrate on this point, the trial court found that the documents are relevant

because they document that Father lost custody of his two older children and failed to complete case plan services to reunify with those children. The trial court found that Father's past behavior informs the environment to which I.T. would be exposed, a matter of relevance to a finding of dependency under R.C. 2151.04(C). Moreover, because certified court documents are self-authenticating under Evid.R. 902(4) and are admissible under the public records exception to the hearsay rule, the argument is overruled. *See* Evid.R. 803(8); *In re R.P.*, 9th Dist. Summit No. 26836, 2013-Ohio-5728, ¶ 11. *See also In re E.A.*, 9th Dist. Medina No. 12CA0059-M, 2012-Ohio-5925, ¶ 12.

{¶13} Third, Father claims that Exhibit 1 should not have been admitted because there is hearsay within the motion for permanent custody. There is no indication that the motion was offered for the truth of the statements included within it, however, but rather only to reflect the record in Father's other case. In addition, it does not appear that the trial court relied upon the permanent custody motion in reaching its decision, nor has Father made such a claim. Finally, while Father claims the exhibit contains hearsay, he has not identified specific statements within the document that he finds objectionable. This Court will not create an argument on Father's behalf. *See State v. Flowers*, 9th Dist. Summit No. 25841, 2012-Ohio-3783, ¶ 27, citing *In re G.E.S.*, 9th Dist. Summit No. 23963, 2008-Ohio-2671, ¶ 53. This argument is without merit. Father's second assignment of error is overruled.

Assignment of Error Number Three

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ADMITTING [CSB] EXHIBIT 2.

{¶14} CSB Exhibit 2 is Father's parenting evaluation from Summit Psychological Associates that was conducted in September and October 2013 during a custody case involving another of Father's children. Father assigns error to the admission of Exhibit 2 for six reasons.

{¶15} Father first contends that CSB failed to lay a proper foundation for the admission of Exhibit 2 under the business records exception of Evid.R. 803, by failing to establish that the evaluation was created in "the regular practice of that business activity." Evid.R. 803(6). He claims, therefore, that the business records exception does not apply and the document should not have been admitted into evidence.

{¶16} Evidence Rule 803(6) provides for an exception of the following documents from the application of the hearsay rule:

> [a] memorandum, report, record, or data compilation * * * made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

{¶17} In support of his argument, Father cites this Court's decision in *Monroe v. Steen*, 9th Dist. Summit No. 24342, 2009-Ohio-5163, ¶ 13, wherein we wrote:

> The party seeking to admit the business records must provide the appropriate foundation for admission which indicates that the witness "possess[es] a working knowledge of the specific record-keeping system that produced the document." *State v. Aberle*, 5th Dist. Fairfield No. 03CA96, 2004-Ohio-7093, ¶ 24, 26. The witness must be "'familiar with the operation of the business and with the circumstances of the preparation, maintenance, and retrieval of the record in order to reasonably testify on the basis of this knowledge that the record is what it purports to be, and was made in the ordinary course of business.'" *State v. Baker*, 9th Dist. Summit No. 21414, 2003-Ohio-4637, ¶ 11, quoting *Keeva J. Kekst Architects, Inc. v. George*, 8th Dist. Cuyahoga No. 70835, 2002 WL 22047697, *5 (May 15, 1997).

{¶18} In that decision, this Court also explained that "[t]he theory supporting the business records exception is that such records are accurate and trustworthy because they are 'made in the regular course of business by those who have a competent knowledge of the facts recorded and a self-interest to be served through the accuracy of the entries made and kept with

knowledge that they will be relied upon in a systematic conduct of such business[.]'" *Monroe* at ¶ 12, quoting *Weis v. Weis*, 147 Ohio St. 416, 425-426 (1947).

**{¶19}** In the present case, Dr. Sylvia O'Bradovich testified that she is a forensic clinician at Summit Psychological Associates and that she completed the parenting evaluation of Father after he signed a release. She indicated that Exhibit 2, the written report of the evaluation, was kept "in the ordinary course of business" and that it had been created at or near the time of the evaluation. Dr. O'Bradovich testified that her main responsibilities are to provide individual and group therapy to clients and to conduct psychological and forensic evaluations. In addition, she supervises interns and serves on a committee to ensure that all of the paperwork is done to compliance standards. She explained to the court what goes into an assessment and the testing that is conducted. She stated that she has been providing therapy and doing evaluations since 2004 and frequently testifies regarding the evaluations and treatment she provides. Upon consideration, we conclude that a sufficient foundation for the business records exception was established in the present case. Father's argument is overruled.

**{¶20}** Second, Father claims that Exhibit 2 should not have been considered by the trial court because Dr. O'Bradovich's reliance on collateral sources caused the exhibit to constitute inadmissible hearsay. Father has not identified specific statements within the documents that he finds objectionable, and this Court will not create an argument on his behalf. *See Flowers*, 2012-Ohio-3783 at ¶ 27, citing *In re G.E.S.*, 2008-Ohio-2671 at ¶ 53. The argument is overruled.

**{¶21}** Third, Father claims that Dr. O'Bradovich was not qualified to testify to the admission of the report because she was not a licensed psychologist, in that she had not yet taken the examination. In support of his argument, Father cites R.C. 4732.21, which states that "[n]o person who is not a licensed psychologist shall offer or render services as a psychologist or

otherwise engage in the practice of psychology." R.C. 4732.21(A). However, there are exemptions, which specifically exclude those who are working under the direct supervision of a licensed psychologist, as was Dr. O'Bradovich. *See* R.C. 4732.22(A)(3). Dr. O'Bradovich testified that she met with her supervisor on a weekly basis and that her written report regarding Father was reviewed, agreed to, and signed as approved by her supervisor.

**{¶22}** Fourth, Father claims that Dr. O'Bradovich's testimony was barred by the psychologist-patient privilege as explained in R.C. 4732.19 because the exception defined in R.C. 2317.02(B)(1)(b) applies to civil actions, whereas he claims that the present action is a special proceeding.

> **{¶23}** R.C. 2317.02(B)(1)(b) permits a psychologist to testify in
>
> any *civil action* concerning court-ordered treatment or services received by a patient, if the court-ordered treatment or services were ordered as part of a case plan journalized under section 2151.412 of the Revised Code or the court-ordered treatment or services are necessary or relevant to dependency, neglect, or abuse or temporary or permanent custody proceedings under Chapter 2151. of the Revised Code. (Emphasis added.)

Father cites decisional law which states that "[a]ctions in juvenile court that are brought pursuant to statute to temporarily or permanently terminate parental rights are special proceedings, as such actions were not known at common law." *In re Adams*, 115 Ohio St.3d 86, 2007-Ohio-4840, ¶ 43. *See also* R.C. 2505.02(A)(2) (defining a special proceeding in the context of determining the finality of an order.)

**{¶24}** The fact that custody proceedings are considered special proceedings for purposes of determining whether an order reflects finality, however, does not mean they are not considered civil cases for more general purposes. To that point, the Ohio Supreme Court and this Court have both, in fact, denominated juvenile cases as civil cases for general purposes. *See, e.g., State v. Bode*, 144 Ohio St.3d 155, 2015-Ohio-1519, ¶ 12 ("juvenile cases are civil rather

than criminal"); *In re N.R.*, 9th Dist. Summit Nos. 26834 and 26869, 2013-Ohio-4023, ¶ 33 (Carr, J., dissenting) ("juvenile cases are civil in nature").

{¶25} In the present case, the trial court reasonably found the statute to be applicable under its plain language because the evaluation was conducted pursuant to a court-ordered case plan and is relevant to a dependency proceeding. The trial court further found that the statute specifically mentions R.C. 2151.412, the statute that addresses juvenile court case plans and "dependency, neglect or abuse," indicating that the legislature intended this statute to apply to juvenile court proceedings. The Eighth District Court of Appeals has directly applied R.C. 2317.02(B)(1)(b) to a permanent custody case. *See In re D.E.P.*, 8th Dist. Cuyahoga No. 92226, 2009-Ohio-3076, ¶ 17 (A parent required to undergo court-ordered treatment as part of a case plan prepared by a children services agency effectively waives his or her rights to confidentiality of communications with a treating physician or social worker.). *See also In re Songer*, 9th Dist. Lorain No. 01CA00781, 2001 WL 1162831, *6 (Oct. 3, 2001) (similarly applying RC. 2317.02 (G)(1)(g)). The trial court did not err in applying the statutory exception of R.C. 2317.02(B)(1)(b) to the psychologist-client privilege in this case.

{¶26} Fifth, Father argues that the admission of Exhibit 2 is barred by the Fifth Amendment and by Juv.R. 29(B)(5). Under his Fifth Amendment argument, Father claims that the introduction of the exhibit "could implicate him in a sexual offense for which he could be prosecuted." Father claims he was required to discuss "instances of sexual abuse as a juvenile" and "alleged referrals" by CSB during the evaluation which culminated in Exhibit 2. A careful review of the exhibit at issue discloses that Father admitted a single sexual offense to the evaluator, fondling his three-year old cousin, and also that he was adjudicated delinquent for gross sexual imposition for that behavior and served a three-year sentence at a juvenile

correctional facility. The report also mentions the existence of two sexual abuse referrals obtained from CSB records, one substantiated and one unsubstantiated. During the evaluation, Father denied both of these allegations. Otherwise, Father admitted to having a lengthy history of romantic/sexual relationships in the fifteen years since high school that was said by the evaluator to suggest instability and some questionable attitudes (for example, after completing treatment during his three year incarceration, he believed "I'm good on touching kids for now."), but no apparent sexual offenses for which he could be criminally prosecuted going forward and Father has not specifically cited any. Where applicable, the Fifth Amendment offers protection to an individual against self-incrimination in subsequent criminal proceedings. *See, e.g., Walker v. State Medical Bd. of Ohio*, 10th Dist. Franklin No. 01AP-791, 2002 WL 243318, *4 (Feb. 21, 2002). Father has not demonstrated that the exhibit created any such jeopardy. Accordingly, Father's Fifth Amendment argument is without merit. Regarding the Juv.R. 29(B)(5) argument, the rule provides that the trial court must inform any unrepresented party who waives the right to counsel of the right to remain silent at an adjudicatory hearing. By its terms, the rule applies to "unrepresented" individuals and Father does not argue that he was unrepresented.

{¶27} Father's third assignment of error is overruled.

### Assignment of Error Number Four

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ADMITTING [CSB] EXHIBIT 3.

{¶28} CSB Exhibit 3 contains Mother's counseling records from Coleman Behavioral Health. Mother withdrew her initial objection to the admission of the exhibit because she believed it demonstrated that she was getting prenatal care and following doctor's orders. Father, however, asserts error in the admission of these records for two reasons.

{¶29} First, Father argues that the trial court erred in accepting Mother's medical

records from Coleman Behavioral Health into evidence because there was no testimony that the records were compiled in "the regular practice of that business activity" as required by Evid.R. 803(6) to qualify for the business records exception to the hearsay rule. *See Monroe,* 2009-Ohio-5163 at ¶ 13. The records custodian for the Summit County office of Coleman Behavioral Health identified Exhibit 3 as a compilation of Mother's records from that agency and explained that the records were certified and kept in the ordinary course of business. She testified that when she receives a request for records, she produces the records electronically and either faxes them or mails them to the person or agency who requested them. Assuming without deciding that Father has standing to challenge the admissibility of Mother's medical records, we conclude that Father has not demonstrated error in regard to a failure to comply with the requirements of Evid.R. 803(6) for purposes of considering the admissibility of Exhibit 3 under the business records exception.

{¶30} Second, Father contends that, even if the counseling records are admissible under the business records exception, they may not be used "to prove the truth of the matters asserted therein when such statements are from an out of court declarant - the counselor." In making this argument, Father essentially restates his claim that the report is impermissible hearsay. Having found that Father failed to demonstrate error above, we reach the same result here. Father's fourth assignment of error is overruled.

Assignment of Error Number Five

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING
THE MINOR CHILD DEPENDENT BECAUSE THE TRIAL COURT'S
JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶31} Father argues that the weight of the evidence does not support a finding that I.T. is a dependent child under R.C. 2151.04(C). R.C. 2151.04(C) provides that a dependent child is

one "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship." Dependency must be proved by clear and convincing evidence. *In re O.H.*, 9th Dist. Summit No. 25761, 2011-Ohio-5632, ¶ 6. *See also* R.C. 2151.35(A)(1); Juv.R. 29(E)(4). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**{¶32}** Ohio case law has established that "[t]o establish dependency under R.C. 2151.04(C), evidence must be presented 'of conditions or environmental elements that were adverse to the normal development of the child.'" *In re C.S.* 9th Dist. Summit No. 26178, 2012-Ohio-2884, ¶ 11, quoting *In re A.C., C.C., and C.S.*, 9th Dist. Wayne Nos. 03CA0053, 03CA0054, and 03CA0055, 2004-Ohio-3248, ¶ 14. A dependency finding under R.C. 2151.04(C) does not require specific parental fault; rather the focus is on the child's situation to determine whether the child is without proper or adequate care or support. *In re R.P.*, 9th Dist. Summit No. 26836, 2013-Ohio-5728, ¶ 19. "The conduct of the parent is relevant only insofar as it forms a part of the children's environment and it is significant only if it has a detrimental impact on them." *In re A.C.* at ¶ 14, citing *In re Burrell*, 58 Ohio St.2d 37, 39 (1979). This Court has held that a parent's mental health is directly related to a child's environment and may properly be considered in determining whether state intervention is thereby warranted. *In re J.C.*, 9th Dist. Summit Nos. 26229 and 26233, 2012-Ohio-3144, ¶ 21.

**{¶33}** At the adjudicatory hearing, the trial court heard testimony from Dr. Sylvia O'Bradovich, a forensic clinician with a doctoral degree in psychology and clinical psychology at Summit Psychological Associates. In framing his argument on this assignment of error, Father

has restated his earlier arguments challenging the testimony of Dr. O'Bradovich and has claimed that when her testimony is excluded, the remaining evidence fails to support a finding of dependency. Having previously overruled those arguments under Assignment of Error Number Three, we need not reconsider them here. As a result, the trial court properly considered the testimony of Dr. O'Bradovich in reaching its decision.

{¶34} The trial court also properly considered testimony from two CSB intake caseworkers as well as documentary evidence. The trial court reasoned that the mental health and safety concerns of Mother and Father inform the child's environment and that it was appropriate to consider the evidence in the record on this point. *See In re J.C.* at ¶ 21 (a parent's mental health is directly related to a child's environment and is relevant to a determination of whether the child's environment warrants state intervention).

{¶35} The record contains evidence regarding mental health and safety concerns for both parents. There was evidence that Mother had a diagnosis of bipolar disorder (currently untreated), suffered from severe anxiety, was experiencing current mood swings, demonstrated an inability to go anywhere outside of her home alone, and was extremely reliant on Father. Regarding Father, there were concerns regarding a diagnosis of bipolar disorder, a history of sexually offending children, cognitive delays, an alcohol use disorder, and maladaptive personality traits. Father was said to have deficits in adaptive functioning and to not be able to care for himself independently. In addition, he has a poor memory, is not able to do basic math calculations, does not understand the passage of time, and has poor sequential reasoning. In regard to his personality traits, Dr. O'Bradovich testified that Father perceives things in a distorted or inaccurate manner. He does not accept responsibility for his behavior, exercises poor judgment, has poor impulse control, and has not shown an ability to think ahead and make

decisions that are in his best interest in the long term. Moreover, Father was said to have had a chaotic and unstable relationship history. When he faces the end of a relationship, he becomes suicidal if he perceives that he is being rejected or abandoned. Father reported that he had been hospitalized a couple times for suicidal ideations or attempts related to relationship break-ups. He was referred for services, but did not follow through because he believed he did not need them. Dr. O'Bradovich testified that Father's knowledge of parenting issues was limited to basic and concrete concepts. Despite Father's assertion that he had completed treatment for his past sexual behavior, Dr. O'Bradovich expressed a continuing concern about this risk based on Father's explanations and justifications. According to the caseworker, Father was not permitted to have unsupervised contact with his eight-year-old son who was then in CSB's temporary custody. In addition, there was evidence that Father had violated the order in the present case that he not have unsupervised contact with I.T.

**{¶36}** The record further revealed that each parent had two children that were not in his or her care. Mother's other children are apparently in the care of paternal grandparents, although it is not clear if Mother surrendered custody to avoid a custody battle with her ex-husband or if the arrangement was the outcome of a children services case. One of Father's children, K.T., had been placed with the paternal grandmother, but that child has since been removed from her care due to allegations of inappropriate behavior. The paternal grandmother was residing in the same home where the parents planned to raise I.T.

**{¶37}** One of the intake workers explained that she was concerned about infant I.T.'s well-being because the infant was completely dependent on his caregivers and, given Mother's mental health issues, she was concerned as to whether Mother had the ability to protect the infant. She explained that during the team meeting, a possible safety plan was discussed in

which Mother and I.T. would reside with the maternal grandmother while Father remained in the home. Mother stated that she would prefer to stay with Father and let I.T. reside with the maternal grandmother. This created a concern that Mother would prioritize Father's needs over those of the child.

{¶38} Finally, Father claims that the trial court's finding of dependency is not statutorily permissible because the court "relied on *some variation of* a prospective dependency theory" (emphasis added) and because he believes prospective dependency is permitted under R.C. 2151.04(D), but not under R.C. 2151.04(C). Although the trial court considered Father's argument on the point, the trial court did not enter a finding of prospective dependency in this case, but rather found that the child is dependent under R.C. 2151.04(C). R.C. 2151.04(C) requires the court to find only that the child is one "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship." R.C. 2151.04(C).

{¶39} The evidence before the trial court demonstrates that I.T.'s environment created a substantial risk to his well-being. The evidence clearly and convincingly supports a finding that I.T.'s "condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship" and, therefore, supports the trial court finding that I.T. is a dependent child under R.C. 2151.04(C). The trial court's adjudication of I.T. is not against the weight of evidence. Father's fifth assignment of error is overruled.

III

{¶40} Father's five assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.

APPEARANCES:

DEREK CEK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

MARY O'NEILL-MARNECHECK, Attorney at Law, for Appellee.

TONY PAXTON, Guardian ad Litem.