[Cite as *In re T.Z.*, 2017-Ohio-7592.]

STATE OF OHIO )   IN THE COURT OF APPEALS
     )ss:  NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

IN RE: T.Z.        C.A. No.  28595
  L.Z.
  A.Z.
  G.Z.
  D.Z.        APPEAL FROM JUDGMENT
            ENTERED IN THE
            COURT OF COMMON PLEAS
            COUNTY OF SUMMIT, OHIO
            CASE Nos.  DN 14-09-633
                 DN 14-09-634
                 DN 14-09-635
                 DN 14-09-636
                 DN 14-09-637

DECISION AND JOURNAL ENTRY

Dated: September 13, 2017

---

CALLAHAN, Judge.

{¶1} Appellant, A.Z. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to five of her minor children and placed them in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2} Mother is the biological mother of 11 children. Mother's oldest two children were not parties to this case because Mother agreed to place them in the legal custody of their maternal grandmother many years ago. Four other children were removed from Mother's custody during the trial court proceedings, but those children are not parties to this appeal.

{¶3} The five children at issue in this appeal are G.Z., born January 25, 2006; T.Z., born December 13, 2007; L.Z., born September 4, 2009; D.Z., born June 13, 2011; and A.Z., born July 17, 2013. The father of these children ("Father") participated in the trial court proceedings but did not appeal from the trial court's judgment.

{¶4} Before this case began, these children had resided with Mother and Father in Cuyahoga County, where the family had a lengthy history with Cuyahoga County Department of Children and Family Services because of mental health problems, the poor condition of the home, and the inability of the parents to meet the children's basic needs. While a juvenile case was pending in Cuyahoga County, Mother ended her relationship with Father and moved to Summit County with the children. She and the children immediately began living with Mother's new boyfriend, Aron.

{¶5} On September 25, 2014, these five children were removed from Mother's custody pursuant to Juv.R. 6. The following day, CSB filed complaints alleging that the children were abused, neglected, and dependent because of Mother's long history with children services agencies, the deplorable condition of her current home, and the fact that she had exposed her children to inappropriate adults, including Aron and another man, both of whom were convicted felons.

{¶6} Mother later stipulated that the children were neglected and dependent because, at the time of their removal, the children were hungry, dirty, and living in a filthy home; had not been receiving necessary medical or dental care; had been living in the home with Aron, who had been convicted of illegal use of a minor in nudity oriented material or performance; and another man, Eddie, had been staying with the family for two weeks. Eddie was a Tier III registered sex offender, who had been convicted of raping and kidnapping a teen.

{¶7} After the children were removed from the home, some of them disclosed that Eddie had repeatedly sexually molested them while he had been with the family. Eddie was later prosecuted, but was allowed to plead guilty to a lesser offense of child endangering so the children did not have to go through the trauma of testifying against him at trial.

{¶8} The case plan focused on services to address Mother's history of making poor decisions about meeting her children's basic needs and protecting them from adults who posed a risk of harming them. Mother completed a psychological evaluation and was diagnosed with an unspecified personality disorder with dependent, borderline, and antisocial traits. The disorder is characterized by an unwillingness or inability to follow rules or accept responsibility for one's behavior and an unhealthy dependency on other people. The professional who evaluated Mother recommended that she engage in ongoing, weekly counseling to address her "maladaptive personality traits." One of Mother's counselors further described her as naïve, irresponsible, and unable to control her emotions and impulsive behavior.

{¶9} During her assessment, Mother disclosed a long history of unhealthy and unstable relationships with men who physically and/or emotionally abused her, including Father. Mother met Aron through friends who assured her that "he'll take good care of you" because he would be able to financially support her. Although Mother had known Aron for only a few weeks, he had never met her children, and she knew that he had been convicted more than 10 years earlier for possessing child pornography, she allowed him to live with her children. Aron had told her that the offense involved 16-year-old girls, that it was a one-time occurrence, and that he resorted to pornography "to fill the void" left by the end of another romantic relationship.

{¶10} Throughout this case, CSB and Mother's counselors expressed concern that Mother minimized the threat that Aron posed to her children. The crime that led to Aron's

conviction had actually involved much younger girls, active involvement by Aron, and a five-year term of incarceration. Moreover, Aron violated his probation after he was released from prison by again being caught in possession of child pornography. Aron did not complete sex offender treatment while in prison or afterward.

{¶11} Because Mother continued residing with Aron, he was included in the case plan. As required by the case plan, Aron completed a psychological evaluation and was diagnosed with paraphilic disorder, a sexual disorder that is chronic and must be treated through ongoing counseling. The expert expressed concern about Aron being around children because he had not undergone any treatment or counseling for his psychiatric disorder. He recommended that Aron complete sex offender treatment and parenting classes. Aron did not comply with that requirement of the case plan, however.

{¶12} Mother engaged in counseling for more than one year, but her counselors opined that she had developed only "minimal" insight about how to protect her children. Mother did not accept responsibility for failing to protect her children from sexual abuse by Eddie, but admitted only that she had made a bad choice by allowing him to stay with her family for so long. She said that she was shocked when she learned about him abusing her children because he seemed to be good with them and showed no signs of being a child abuser.

{¶13} Mother planned to continue living with Aron, even though he had failed to comply with the case plan requirement that he undergo treatment for his paraphilic disorder. She did not believe that Aron posed a threat to her children because his conviction had been several years earlier and he was "good" with her children. CSB was concerned that Mother had gained no insight from the family's experience with Eddie, another known sex offender whom Mother thought she could trust because he appeared to be good with her children.

**{¶14}** Rather than making the choice to protect her children from the possibility of abuse by Aron, Mother's plan was to keep an eye on Aron and watch her children for behavioral changes or other symptoms of abuse. She explained that if she discovered that Aron abused her children, she would report him to the police and end her relationship with him.

**{¶15}** Eventually, CSB moved for permanent custody of these five children. Mother alternatively moved for legal custody. Following the final dispositional hearing, the trial court terminated parental rights and placed G.Z., T.Z., L.Z., D.Z., and A.Z. in the permanent custody of CSB. Mother appeals and raises four assignments of error.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT ALLOWED STATEMENTS PURPORTED TO BE BY ONE OF THE CHILDREN TO COME IN UNDER EVID.R. 807 OVER OBJECTIONS THAT THE STATEMENTS WERE INADMISSIBLE.

**{¶16}** Mother's first assignment of error is that the trial court erred in admitting certain evidence under Evid.R. 807. Objections were raised when CSB attempted to introduce a caseworker's testimony that she was present during a medical examination when one of the children disclosed that she had been sexually abused by someone in Mother's home. A lengthy discussion was held on the record about the admissibility of that testimony.

**{¶17}** Ultimately, the trial court agreed with the arguments of counsel that the evidence was not admissible under Evid.R. 807, but it admitted some of the testimony under Evid.R. 803(4). Because Mother does not argue that the evidence was inadmissible under Evid.R. 803(4), her first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT ALLOWED TESTIMONY OF A NON-PARTY'S CONFIDENTIAL MEDICAL INFORMATION OVER OBJECTION.

{¶18} Mother's second assignment of error is that the trial court erred in admitting testimony about the psychological evaluation of Aron because he was not a party to this case and had revoked the releases of information that he had signed. Even if Mother has standing to raise due process and/or testimonial privilege arguments on behalf of Aron, she has failed to demonstrate any error. To begin with, the trial court sustained several objections and did not admit most of the evidence about the psychological evaluation of Aron, including the evaluation report. The only evidence admitted was brief testimony of the evaluator about Aron's diagnosis.

{¶19} A case plan had been prepared for these children because CSB had received temporary custody of them. *See* R.C. 2151.42(A)(2). Requirements for case plans for children and their families are set forth in more detail in the Ohio Administrative Code. *See* R.C. 2151.412(C)(1). Ohio Adm.Code 5101:2-1-01(B)(43) defines a case plan as "a written document developed by the * * * agency and the family which identifies strengths of the family, concerns to be resolved and supportive services to be provided which will result in ensuring permanence for the child." Ohio Adm.Code 5101:2-1-01(B)(110) broadly defines a family as "a group of people related by blood or circumstances who may rely upon one another for sustenance, support, security, and or socialization."

{¶20} Although Aron was not the parent of any of these children, Mother did not dispute that she and her children had been living with him, that they relied on him for financial and moral support, and that she planned to continue living with him. Because Aron was a part of

Mother's "family" for case planning purposes, he was necessarily included in the case plan. *See* R.C. 2151.412; Ohio Adm.Code 5101:2-38-05.

**{¶21}** One of the case plan requirements for Aron was that he obtain a psychological evaluation and follow any treatment recommendations. R.C. 2317.02(G)(1)(g) provides that the testimonial privilege does not apply if:

> The testimony is sought in a civil action and concerns court-ordered treatment or services received by a patient as part of a case plan journalized under section 2151.412 of the Revised Code or the court-ordered treatment or services are necessary or relevant to dependency, neglect, or abuse or temporary or permanent custody proceedings under Chapter 2151. of the Revised Code.

Aron complied with the case plan requirement that he complete a psychological evaluation. Consequently, because Aron obtained his assessment as part of a court-ordered case plan, testimony about his assessment was not privileged and could be admitted at the permanent custody hearing. Mother's second assignment of error is overruled.

**ASSIGNMENT OF ERROR III**

> THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT ADMITTED A CERTIFIED COPY OF [EDDIE'S] CONVICTION FOR A MISDEMEANOR CHARGE.

**{¶22}** Next, Mother argues that the trial court erred in admitting a certified copy of Eddie's child endangering conviction because it failed to satisfy the requirements of Evid.R. 803(22). To demonstrate reversible error, however, Mother must demonstrate that the trial court committed error and that she suffered prejudice as a result. *See Lowry v. Lowry*, 48 Ohio App.3d 184, 190 (4th Dist.1988), citing *Gries Sports Ents., Inc. v. Cleveland Browns Football Co., Inc.*, 26 Ohio St.3d 15, 28 (1986). Even if Mother could convince this Court that the trial court erred in admitting the journal entry of Eddie's conviction, she has failed to demonstrate that she suffered any prejudice.

{¶23} Substantial other evidence was properly admitted about Eddie's conviction. *See, e.g., In re F.R.*, 9th Dist. Lorain No. 14CA010543, 2015-Ohio-1877, ¶ 16. There was testimony that Eddie was convicted of child endangering pertaining to some of Mother's children. That testimony explained that the crime involved sexual abuse of some of Mother's children, but that a plea deal was reached so the children would not have to appear at a trial to testify against Eddie. Mother herself admitted that she believed that Eddie had sexually assaulted her children while he stayed at her home. Because Mother was not prejudiced by the admission of the journal entry of Eddie's misdemeanor conviction of child endangering, her third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT TERMINATED MOTHER'S PARENTAL RIGHTS AS THE EVIDENCE WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶24} Finally, Mother contends that the trial court's decision was not supported by clear and convincing evidence. Before a juvenile court may terminate parental rights and award permanent custody of children to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the children are abandoned; orphaned; have been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; they or another child in a parent's custody have been adjudicated abused, neglected, or dependent on three separate occasions; or they cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best

interest of the children, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

**{¶25}** The trial court found that CSB satisfied the first prong of the test because the children had been in the temporary custody of CSB for more than 12 months of a consecutive 22-month period. *See* R.C. 2151.414(B)(1)(d). Mother does not dispute that finding but confines her argument to the trial court's determination that permanent custody was in the best interest of the children.

**{¶26}** When determining the children's best interest under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the children, their wishes, their custodial history, and the need for permanence in their lives. *In re R.G.*, 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11.

**{¶27}** Although Mother regularly visited the children and they enjoyed seeing her, the main concern of CSB was Mother's inability to protect them from harm or even provide for their basic needs because of her unhealthy dependency on other people and lack of insight into how to care for and protect her children. Mother continued to be financially and emotionally dependent on Aron, and failed to recognize that he posed a risk to her children.

**{¶28}** The children all wished to be returned to Mother's custody, but numerous witnesses expressed their opinion that Mother lacked the ability to care for them. The guardian ad litem opined that permanent custody was in their best interest because Mother lacked the insight to protect her children. He expressed concern that Mother minimized the threat posed by Aron because Aron had never received any sex offender treatment and he reoffended while on probation after serving time in prison.

**{¶29}** By the time of the permanent custody hearing, the children had been living in temporary placements for almost two and one-half years and were in need of a legally secure permanent placement. Mother was not prepared to provide them with a safe and stable permanent home and CSB had been unable to find any relatives who were willing and able to do so. Therefore, the trial court reasonably concluded that a legally secure permanent placement would only be achieved by placing the children in the permanent custody of CSB. Mother's fourth assignment of error is overruled.

III.

**{¶30}** Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.

APPEARANCES:

DENISE E. FERGUSON, Attorney at Law, for Appellant.

ED SMITH, Attorney at Law, for Appellee.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

SHUBHRA AGARWAL, Attorney at Law, for Appellee.

RANDALL BRAY, Guardian ad Litem.