[Cite as *In re S.S., H.S., A.S.*, 2018-Ohio-2279.]

STATE OF OHIO       )
                               )ss:
COUNTY OF SUMMIT      )

| | |
|---|---|
| IN RE: S.S.<br>        H.S.<br>        A.S. | IN THE COURT OF APPEALS<br>NINTH JUDICIAL DISTRICT<br><br>C.A. No.       28921<br><br><br>APPEAL FROM JUDGMENT<br>ENTERED IN THE<br>COURT OF COMMON PLEAS<br>COUNTY OF SUMMIT, OHIO<br>CASE Nos.    DN 15-07-494<br>                  DN 15-05-282<br>                  DN 15-05-281 |

DECISION AND JOURNAL ENTRY

Dated: June 13, 2018

CALLAHAN, Judge.

**{¶1}** Appellant, A.Z. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to three of her minor children and placed them in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

**{¶2}** Mother is the biological mother of eleven children, but only her three youngest children are at issue in this appeal. The children's father ("Father") did not appeal from the trial court's judgment.

**{¶3}** Mother gave birth to her oldest two children while she was a teenager and, for reasons not clear from the record, those children were placed in the legal custody of the maternal grandmother many years ago. During September 2014, CSB opened an involuntary case with

the six children then in Mother's custody because of the deplorable condition of Mother's home, her history with children services agencies in other counties, her inability to meet the children's basic needs, and because she was living with and exposing her children to Father and another man, both of whom had been convicted of felony sex offenses. Although Father was not the father of any of those children, he was included on the case plan because he resided in the home with Mother. During that case, Mother continued to reside with Father and failed to work on the reunification requirements of the case plan.

{¶4} On April 1, 2015, Mother gave birth to S.S., H.S., and A.S. at 32 weeks gestation. All three children required tube feeding and were transferred to the neonatal intensive care unit at Akron Children's Hospital. Because Mother was not visiting the triplets regularly and had pending dependency and neglect cases with CSB pertaining to the six older children, S.S., H.S., and A.S. were removed from her custody before they were released from the hospital.

{¶5} Because A.S. was the smallest child and required more extensive medical care, she remained in the hospital two months longer than S.S. and H.S. CSB filed complaints to remove each child from Mother's custody during May and July 2015, when they were scheduled to be released from the hospital. All three children were later adjudicated dependent, placed in the temporary custody of CSB, and have resided together in the same foster home throughout this case.

{¶6} The case plan in this case required, among other things, that Mother engage in parenting classes and mental health counseling to address her multiple mental health diagnoses and demonstrate an ability to meet her children's basic and special needs. After their release from the hospital, the children continued to require specialized medical care and therapy throughout this case. A.S. has had difficulty swallowing and required specialized feeding, the

children have other medical problems, and all three have developmental delays. Although Mother was encouraged to attend their medical and therapy appointments, she did not consistently do so. During the first year of this case, Mother also failed to consistently engage in counseling, obtain stable housing, or work on other reunification requirements of the case plan.

{¶7} During March 2017, while this case was still pending, the juvenile cases involving six of Mother's older children led to the termination of her parental rights to five of them. The sixth child was placed in the legal custody of the maternal grandmother, who already had custody of Mother's two oldest children.

{¶8} CSB had already moved for permanent custody of S.S., H.S., and A.S., but, after the trial court involuntarily terminated Mother's parental rights to the five older siblings, CSB amended the motion to add that ground. *See* R.C. 2151.414(E)(11) and (D)(1)(e). A dispositional hearing was held before a visiting judge on the motions for permanent custody and the parents' alternative requests for legal custody of the children.

{¶9} At the hearing, the parties agreed that, at the time CSB filed its first motion for permanent custody during November 2016, S.S., H.S., and A.S. had been in the temporary custody of CSB for at least 12 months of a consecutive 22-month period. *See* R.C. 2151.414(B)(1)(d). The only contested issue at the hearing was whether it was in the best interest of the children to be placed in the legal custody of one or both parents or in the permanent custody of CSB.

{¶10} After the hearing, but before the trial court issued a dispositional decision, this Court affirmed the termination of Mother's parental rights to five of her older children. *In re T.Z.*, 9th Dist. Summit No. 28595, 2017-Ohio-7592. Shortly afterward, the trial court issued its judgment in this case, terminating parental rights and granting permanent custody of S.S., H.S.,

and A.S. to CSB. Mother appeals and raises five assignments of error, some of which will be consolidated for ease of review.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR OVER THE PARENT[S'] OBJECTIONS IN ADMITTING EXHIBITS RELATED TO A PRIOR PERMANENT CUSTODY CASE INVOLVING MOTHER, BUT NOT FATHER OR THE MINOR CHILDREN.

{¶11} Mother's first assignment of error is that the trial court erred in admitting journal entries and other portions of the case files from the dependency and neglect cases of her older children. She argues that the records were inadmissible because those cases did not involve these children or Father and, therefore, were not relevant to this case. To begin with, although Father was not a party to those cases because he was not the parent of any of the children, his behavior had partially formed the basis of the complaints and adjudications, and he was included on the case plan as a household member.

{¶12} Moreover, CSB had based its complaint in this case, in part, on the prior cases involving the siblings. The fact that Mother had been involved in prior dependency and neglect cases with older siblings of these children, leading to the involuntary termination of her parental rights, was directly relevant to CSB's motion for permanent custody in this case. *See* R.C. 2151.414(E)(11); R.C. 2151.414(D)(1)(e); *In re N.M.*, 9th Dist. Summit No. 28118, 2016-Ohio-5212, ¶ 23; *In re P.T.*, 9th Dist. Summit No. 24207, 2008-Ohio-4690, ¶ 16.

{¶13} Mother also asserts that the contents of the prior dependency and neglect files were inadmissible because they include hearsay. These documents were not inadmissible hearsay, however, because "certified court documents are self-authenticating under Evid.R. 902(4) and are admissible under the public records exception to the hearsay rule[.]" *In re I.T.*,

9th Dist. Summit Nos. 27513, 27560, 27581, 2016-Ohio-555, ¶ 12, citing Evid.R. 803(8), *In re R.P.*, 9th Dist. Summit No. 26836, 2013-Ohio-5728, ¶ 11, and *In re E.A.*, 9th Dist. Medina No. 12CA0059-M, 2012-Ohio-5925, ¶ 12. *See also* R.C. 2317.42. Because Mother has failed to demonstrate any error in the admission and consideration of the contents of the dependency case files of her older children, her first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT'S ACTION IN TAKING JUDICIAL NOTICE OF THE DECISION AND JOURNAL ENTRY OF THE NINTH DISTRICT COURT OF APPEALS TIME-STAMPED SEPTEMBER 13, 2017, IN CASE NO. 28595 AFTER THE CONCLUSION OF THE PERMANENT CUSTODY TRIAL IN THE INSTANT CASE, WAS CONTRARY TO LAW AND/OR CONSTITUTED AN ABUSE OF DISCRETION; AND PREJUDICED APPELLANT-MOTHER'S CONSTITUTIONAL RIGHT TO HAVE A FAIR AND IMPARTIAL TRIAL.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED PLAIN ERROR BY TAKING JUDICIAL NOTICE OF THE NINTH DISTRICT COURT OF APPEALS DECISION AND JOURNAL ENTRY TIME-STAMPED SEPTEMBER 13, 2017, IN CASE NO. 28595 AFTER THE CONCLUSION OF THE PERMANENT CUSTODY TRIAL IN THIS CASE.

{¶14} Mother argues through her second and third assignments of error that the trial court erred by considering that this Court affirmed the involuntary termination of Mother's parental rights to the older siblings of these children in *In re T.Z.*, 2017-Ohio-7592. Among other reasons, Mother asserts that the trial court erred in considering this Court's September 2017 decision because it was not issued until one month after the permanent custody hearing concluded. *See* R.C. 2151.414(B)(1).

{¶15} "To demonstrate reversible error, however, [Mother] must demonstrate not only that the trial court committed error but also that [she] suffered prejudice as a result." *In re S.A.-C.*, 9th Dist. Summit No. 28704, 2017-Ohio-9297, ¶ 12. Even if the trial court erred by

considering this Court's decision in *In re T.Z.* because it was not issued and filed in those children's cases until after the permanent custody hearing, Mother has failed to demonstrate any resulting prejudice.

{¶16} Notably, there was no need for the trial court to wait until this Court affirmed the prior permanent custody judgment to consider it under R.C. 2151.414(E)(11) or R.C. 2151.414(D)(1)(e). The trial court's consolidated judgment that terminated Mother's parental rights to her five older children was filed on March 27, 2017, before CSB amended its motion for permanent custody. Although Mother argued at the subsequent hearing and again on appeal that the March 2017 permanent custody decision was stayed pending appeal, there is nothing in the record before us to indicate that a stay was issued during the pendency of that appeal.

{¶17} Moreover, even if the trial court stayed the permanent custody judgment, Civ.R. 62 only authorizes a stay of "the execution" of the judgment or proceedings "to enforce the judgment" during the pendency of an appeal. *See* Civ.R. 62(A)-(C); *State ex rel. Geauga Cty. Bd. of Commrs. v. Milligan*, 100 Ohio St.3d 366, 2003-Ohio-6608, ¶ 14. An order to stay the *execution* of a judgment has no effect on a judgment's finality or enforceability, but simply prevents the actual enforcement or execution. *See Gieg v. Gieg*, 16 Ohio App.3d 51, 53 (11th Dist.1984). In other words, a stay would prevent execution of the permanent custody judgment by placing the children for adoption, but a stay would not invalidate or undo the judgment. Instead, the purpose of a stay is to avoid the merits of the appeal becoming moot because the judgment has been executed or satisfied. *See*, *e.g.*, *Filip v. Wakefield Run Master Homeowners' Assn.*, 9th Dist. Medina No. 17CA0025-M, 2018-Ohio-1171, ¶ 9-10.

{¶18} The trial court may have been concerned that the March 2017 termination of Mother's parental rights could have been reversed on appeal, which would have invalidated that

ground for permanent custody in this case. Although the trial court would run the risk that its judgment might later be reversed for that reason, it was not precluded from relying on the March 2017 termination of Mother's parental rights before that decision was affirmed on appeal. *See*, *e.g.*, R.C. 2151.414(E)(11); *In re J.P.*, 9th Dist. Lorain No. 15CA01082, 2016-Ohio-337, ¶ 6.

**{¶19}** Because the trial court admitted certified copies of the older siblings' juvenile court case files, evidence of the March 2017 termination of Mother's parental rights to each of those children was before the trial court at the hearing. With that evidence, the trial court could properly consider the prior terminations under R.C. 2151.414(E)(11) and 2151.414(D)(5). Therefore, Mother has failed to demonstrate that she suffered any prejudice by the trial court also considering that this Court later affirmed those permanent custody judgments on appeal. Mother's second and third assignments of error are overruled.

### ASSIGNMENT OF ERROR IV

THE TRIAL COURT'S DECISIONS DENYING MOTHER'S MOTION FOR LEGAL CUSTODY AND GRANTING [CSB'S] MOTION FOR PERMANENT CUSTODY, THEREBY TERMINATING MOTHER'S PARENTAL RIGHTS, WERE NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE, WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE; AND/OR CONSTITUTED AN ABUSE OF DISCRETION.

### ASSIGNMENT OF ERROR V

THE TRIAL COURT'S DECISIONS DENYING MOTHER'S ALTERNATIVE MOTION FOR LEGAL CUSTODY TO FATHER AND GRANTING [CSB'S] MOTION FOR PERMANENT CUSTODY, THEREBY TERMINATING MOTHER'S RESIDUAL PARENTAL RIGHTS, WERE NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE; WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE; AND/OR CONSTITUTED AN ABUSE OF DISCRETION.

**{¶20}** Mother argues that the trial court erred by placing the triplets in the permanent custody of CSB rather than placing them in the legal custody of one or both parents. Before a juvenile court may terminate parental rights and award permanent custody of children to a proper

moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the children are abandoned; orphaned; have been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the children or another child in a parent's custody has been adjudicated abused, neglected, or dependent on three separate occasions; or the children cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶21} The trial court found that CSB had satisfied the first prong of the permanent custody test for alternative reasons, including that the children had been in the temporary custody of CSB for at least 12 months of a 22-month period. Mother does not dispute that finding but confines her challenge to the trial court's conclusion that permanent custody was in the best interest of the children.

{¶22} Because the trial court's decision whether to place the children in the legal custody of one or both parents was also based on the best interest of the children, "this Court typically conducts a single 'best interest' review of the trial court's decision to place the child[ren] in the permanent custody of the agency rather than in the legal custody to a relative." *In re I.A.*, 9th Dist. Summit No. 26642, 2013-Ohio-360, ¶ 10, quoting *In re T-G.M.*, 9th Dist. Summit No. 25858, 2011-Ohio-3940, ¶ 13.

{¶23} If permanent custody was in the children's best interest, legal custody to Mother and/or Father necessarily was not. "'Consequently, this Court will review the factors set forth in R.C. 2151.414(D) in reviewing the [best interest] decision of the trial court * * *.'" *Id*. When

determining the children's best interest under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the children, their wishes, the custodial history of the children, the need for permanence in their lives, and whether any of the factors set forth in R.C. 2151.414(E)(7) to (11) apply to the facts of the case. *See In re R.G.,* 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11.

**{¶24}** The parents' interaction with the children was limited to scheduled visits that were supervised or monitored because they had not complied with the case plan. Father visited the children only sporadically and had refused to work on the reunification goals of the case plan. Mother visited the children regularly but she was not involved in their day-to-day care and did not familiarize herself with the special needs of each child by attending medical or therapy appointments. Although Mother testified that she received information about the children from the foster mother, the evidence was not disputed that Mother had not been involved in any education or hands-on care to address the children's special medical or developmental needs.

**{¶25}** A.S. continued to work with a speech therapist and a dietician for a speech delay and because she had difficulty swallowing. She continued to require tube feeding twice a day and was slowly being introduced to solid foods and thickened liquids. Mother had not been involved in tube feeding A.S. since she was released from the hospital. Mother had not attended any of A.S.'s appointments during the past year, nor had she participated in feeding A.S. during this transition. Mother seemed to have no understanding of the child's feeding issues and merely described her as a "picky" eater. Mother also demonstrated no understanding of any of the children's developmental delays, but instead described them as typical toddlers.

**{¶26}** While living in the same foster home, however, all three children were doing well. The foster parents were ensuring that they received the regular medical care and therapy that

they needed. The children were closely bonded to the foster parents and their foster siblings and the foster parents were interested in adopting all three.

{¶27} Because these children were only two years old at the time of the hearing, the guardian ad litem spoke on their behalf. She opined that permanent custody was in their best interest because the parents had not complied with the case plan and were not prepared to meet the children's needs. She expressed concern that Mother had not been attending the children's medical appointments and observed that Mother did not actively engage with the children during visits.

{¶28} S.S., H.S., and A.S. had never lived in the custody of Mother or Father. They had spent more than two years living together in the same foster home and were in need of a legally secure permanent placement. Although Mother argues that the trial court should have placed the children in the legal custody of one or both parents, there was no evidence before the trial court that either parent had the ability to meet the children's basic and special needs.

{¶29} The trial court was also required to consider that Mother's parental rights to five older siblings were involuntarily terminated during March 2017, before CSB filed its amended motion for permanent custody of the triplets. R.C. 2151.414(D)(1)(e); R.C. 2151.414(E)(11). As noted already, although that judgment had not yet been affirmed on appeal, the trial court properly admitted evidence about the prior permanent custody trial court judgments. Although R.C. 2151.414(E)(11) provided Mother with an opportunity to present "clear and convincing evidence to prove that, notwithstanding the prior termination, [she] can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child[ren,]" Mother failed to present such evidence. *See In re G.L.S.*, 9th Dist. Summit Nos. 28874, 28893, 2018-Ohio-1606, ¶ 19. She had made some case plan progress, such as acquiring housing and

participating in some counseling, but she did not demonstrate that she was prepared to provide three special needs children with a safe and stable home.

{¶30} Neither parent was prepared to provide the children with a stable home and CSB had been unable to find a suitable relative who was willing to do so. The trial court reasonably concluded that it was in the best interest of these children to be placed in the permanent custody of CSB. Mother's fourth and fifth assignments of error are overruled.

## III.

{¶31} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

CARR, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

JAMES K. REED, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.