[Cite as *In re E.A.*, 2012-Ohio-5925.]

STATE OF OHIO        )
                         )ss:
COUNTY OF MEDINA    )

IN RE: E.A.

IN THE COURT OF APPEALS
NINTH JUDICIAL DISTRICT

C.A. No.      12CA0059-M


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    2011 07 DE 0024

DECISION AND JOURNAL ENTRY

Dated: December 17, 2012

---

DICKINSON, Judge.

## INTRODUCTION

**{¶1}** This appeal involves the permanent custody of a minor. The issue raised by the mother is whether the trial court incorrectly admitted hearsay documents that were not properly authenticated as business records. This Court affirms the juvenile court's judgment because the mother did not object to, and even participated in eliciting, extensive testimony about the substantive content of those documents. Consequently, the mother suffered no prejudice by the admission of the documents themselves.

## BACKGROUND

**{¶2}** Penny A. is the natural mother of six children. Only her youngest child, E.A., is at issue in this case. E.A.'s father voluntarily relinquished his parental rights and is not a party to the appeal.

{¶3}    The mother has had continual involvement with children services agencies in Medina, Wayne, and Tuscarawas Counties since 1997, when her oldest child, C.L., was an infant. C.L. was removed from her custody because the home was unsafe and unsanitary and the mother had exhibited symptoms of mental illness by repeatedly expressing her belief that C.L. was possessed by a demon. The mother eventually reached an agreement with Medina County Job and Family Services that C.L. would be placed in the legal custody of the maternal grandparents and the mother would continue to participate in mental health treatment. That case was eventually closed because the mother moved out of the area.

{¶4}    Between late 2000 and early 2003, the mother gave birth to three more children and resided with them in Wayne County. Wayne County Children Services repeatedly removed the children from the mother's custody because of the filthy condition of the home, medical neglect of the children, and domestic violence in the home. Because Children Services was also concerned about the mother's mental health, she was required to participate in counseling. For approximately two years, Children Services and a professional cleaning service worked with the mother to clean and organize her home and maintain it in a condition that was suitable for small children. Wayne County Children Services transferred the case to Medina County when the mother relocated there.

{¶5}    By early 2005, the mother had given birth to another child and was residing with four children in Medina County. Although the children apparently remained in the mother's custody, she continued to have difficulty maintaining a safe and sanitary home. Each time the caseworker made an unannounced visit, the mother's home was cluttered and the children and the home were unclean. Nonetheless, Medina County closed that case after a few months.

{¶6} Two months later, a new dependency case was opened in Tuscarawas County, where the mother was then living with the children. That case again focused on the mother's neglect of the children and the deplorable condition of the home. Her home at that time was described as filthy, with food ground into the floor, rotten food in the refrigerator, and dirty clothes and dirty diapers scattered everywhere. The mother consented to the temporary removal of the four children from her home while she worked on a case plan.

{¶7} The mother, however, did not make sufficient progress on the case plan. The agency's case management supervisor described her reunification efforts as "minimal" and explained that, during visits with her children, the mother would interact with them by watching them from the couch and directing the older children to care for the younger ones. Tuscarawas Job and Family Services continued to have concerns about the mother's ability to meet her children's needs and provide them with a suitable home. It ultimately moved for and was granted permanent custody of those four children.

{¶8} E.A. was born in Medina County on July 26, 2011. The hospital notified Medina County Job and Family Services that its personnel had concerns about the mother's ability to care for the child. The mother was not breast feeding E.A. as often as recommended, was not receptive to suggestions from the hospital's lactation counselor, and was spending more time sleeping than with her child. The mother reported to a hospital social worker that she had bipolar disorder. Although the mother stated that she was engaged in counseling, the social worker expressed concern that the mother told her about numerous sources of stress in her life, including the removal of her other children, her lack of income and independent housing, and that she supposedly had cervical cancer and an ankle injury requiring surgery.

{¶9} Medina County Job and Family Services filed this dependency action, and E.A. was released from the hospital into the custody of the agency. Because the mother's parental rights to E.A.'s four older siblings had been involuntarily terminated, which constituted a basis for the agency to seek permanent custody of E.A., Job and Family Services sought a disposition of permanent custody in its complaint. *See* R.C. 2151.41.4(E)(11); R.C. 2151.35.3(B); Juv.R. 10(D). For that same reason, the juvenile court determined that Job and Family Services was not required to make reasonable efforts to reunify E.A. with the mother. R.C. 2151.41.9(A)(2)(e). Consequently, Job and Family Services did not develop a case plan to assist the mother with reunification of the family.

{¶10} Following a hearing on the permanent custody motion, the juvenile court found that Job and Family Services had established both prongs of the permanent custody test by clear and convincing evidence. Therefore, it terminated the mother's parental rights and placed E.A. in the permanent custody of Job and Family Services. The mother has appealed.

## ADMISSION OF DOCUMENTS

{¶11} The mother's assignment of error is that the trial court incorrectly admitted several exhibits, which included hospital records and uncertified children service agency documents from the dependency cases involving the mother's five older children. The mother has argued that the records were inadmissible hearsay and could not be admitted as business records under Rule 803(6) of the Ohio Rules of Evidence because Job and Family Services failed to properly authenticate them.

{¶12} Job and Family Services moved for permanent custody of E.A. based on Section 2151.41.4(E)(11) of the Ohio Revised Code, which provides that a children services agency establishes the first prong of the permanent custody test by proving that "[t]he parent has had

parental rights involuntarily terminated with respect to a sibling of the child[.]" Job and Family Services proved that the mother's parental rights to the four older siblings had been involuntarily terminated through the testimony of several witnesses and the journal entry from Tuscarawas County that terminated her parental rights. The mother raised no objection to the admission of the journal entry or several other journal entries from the dependency cases involving her older children. Those journal entries were all properly certified and, therefore, were self-authenticating as public records under Rule 902(4) of the Ohio Rules of Evidence.

{¶13} Although the mother did raise objections to the admission of the uncertified hospital records and case plan documents, Job and Family Services had already questioned its witnesses extensively about the content of those documents, without any objection from the mother. In fact, during her cross-examination of some of the agency's witnesses, the mother elicited additional testimony about the hearsay content of those case plans and hospital records. The admission of the documents themselves, even if erroneous, does not constitute grounds for reversal because the substance of the documents had already been admitted through other evidence. *In re Decker*, 20 Ohio App. 3d 203, 205 (3d Dist. 1984); *In re Howard*, 9th Dist. No. 11117, 1983 WL 4231, *3 (Sept. 21, 1983).

{¶14} The lack of prejudice to the mother is further demonstrated by the overwhelming evidence that supported the trial court's decision and the absence of any evidence to support the mother's defense against the permanent custody motion. Although a parent typically is not required to present any evidence at a permanent hearing, the Ohio General Assembly amended Section 2151.41.4(E)(11) of the Ohio Revised Code, effective April 7, 2009, to place a burden on the parent to essentially rebut a presumption that, because her parental rights were involuntarily terminated as to her other children, she is not a suitable parent for additional

children. Given that Job and Family Services had established that the mother's parental rights to E.A.'s older siblings had been involuntarily terminated, the mother had a burden "to provide clear and convincing evidence to prove that, notwithstanding the prior termination, [she] can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child." R.C. 2151.41.4(E)(11). Because the mother presented no witnesses or other evidence in this case, there was nothing before the juvenile court to even suggest, much less prove clearly and convincingly, that the mother could provide adequate care for E.A. The mother's assignment of error is overruled.

CONCLUSION

{¶15} The mother's assignment of error is overruled. The judgment of the juvenile court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CLAIR E. DICKINSON
FOR THE COURT

WHITMORE, P. J.
CARR, J.
CONCUR.

APPEARANCES:

RICHARD BARBERA, Attorney at Law, for Appellant.

JENNIFER A. MOORE, Attorney at Law, for Appellee.

MARIE MOORE, Guardian ad litem.

ANDREW PARKER, Attorney at Law, for Father.