[Cite as *In re B.E.*, 2019-Ohio-1040.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | | |

IN RE: B.E.

C.A. No.    18CA0074-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    2016 05 DE 0045

DECISION AND JOURNAL ENTRY

Dated: March 25, 2019

CALLAHAN, Judge.

{¶1} Appellant, Shannon E. ("Mother"), appeals from a judgment of the Medina County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her minor child in the permanent custody of Medina County Job and Family Services ("MCJFS"). This Court affirms.

I.

{¶2} The only child who is a party to this appeal is Mother's biological child, B.E., born May 9, 2016. Mother's parental rights to an older sibling had been involuntarily terminated before B.E. was born.

{¶3} During October 2012, B.E.'s then five-year-old sibling was removed from Mother's custody in Ashland County and later adjudicated an abused, neglected, and dependent child. Mother was later convicted of two counts of felony child endangering under R.C. 2919.22(B)(2) and, for that reason, had limited contact with the child during the juvenile court

case. A primary concern during the Ashland County case was Mother's limited cognitive ability that had been caused by a traumatic brain injury when she was 16 years old. Because of her serious cognitive limitations, Mother tended to trust manipulative and dangerous people and lacked the ability to protect herself and her child. On March 31, 2015, Mother's parental rights to the older sibling were involuntarily terminated. At that time, Mother was in counseling, but she continued to lack the insight to make appropriate decisions for herself and her child. Mother was also engaged in services through the department of developmental disabilities because she could not manage her own finances or otherwise meet her own basic needs.

{¶4} B.E. was removed from Mother's custody shortly after birth because of Mother's prior case with the older sibling and her limited ability to care for herself or her infant child. B.E. was later adjudicated a dependent child and placed in the temporary custody of MCJFS.

{¶5} During the next several months, Mother worked on the reunification goals of the case plan by engaging in counseling, parenting classes, and visiting her child. MCJFS remained concerned that Mother struggled to meet her own basic needs and lacked the ability to care for a young child. MCJFS initially moved for permanent custody on March 21, 2017, but the trial court denied that motion and ordered the agency to provide Mother with one-on-one parenting instruction that would specially address her cognitive limitations by instructing her while she visited and interacted with the child.

{¶6} Mother began the intensive parenting instruction while she visited B.E. Mother made some progress learning how to feed and supervise B.E., but she was not able to care for him independently. She required continual prompting, redirection, and assistance by the adults who supervised her visits with B.E.

{¶7} On February 2, 2018, MCJFS again moved for permanent custody of B.E. Following a hearing, the trial court terminated Mother's parental rights and placed B.E. in the permanent custody of MCJFS. Mother appeals and raises two assignments of error.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT'S DECISION TO TERMINATE PARENTAL RIGHTS WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶8} Mother's first assignment of error is that the trial court's permanent custody decision was not supported by the evidence presented at the hearing. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child in a parent's custody has been adjudicated abused, neglected, or dependent on three separate occasions; or the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶9} The trial court found that CSB satisfied the first prong of the permanent custody test because B.E. had been in the temporary custody of MCJFS for more than 12 of 22 months. Mother does not dispute that finding, but instead challenges the trial court's finding that permanent custody was in the best interest of B.E.

{¶10} When determining the child's best interest under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the need for permanence in the child's life, and whether any of the factors set forth in R.C. 2151.414(E)(7) to (11) apply to the facts of the case. R.C. 2151.414(D)(1); *In re R.G.,* 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11.

{¶11} Mother's only interaction with B.E. during this two-year case had been through supervised visits for four hours per week. Mother required ongoing assistance from those supervising the visits because she did not understand how to care for her child. The caseworker testified that Mother would not respond to her attempts to redirect Mother's caregiving of B.E. Mother responded more favorably to her intensive parenting instructor, but she continued to require assistance in providing care for her child. B.E. also had developmental delays that needed to be addressed by his caregiver. Mother repeatedly demonstrated a reluctance to acknowledge and/or assist B.E. in his required therapy to address those delays.

{¶12} Mother's adaptive abilities were evaluated through the Vineland-3 Adaptive Behavior Scales approximately one month before the hearing. The report and testimony of the evaluator, a 30-year veteran psychologist, were presented into evidence at the hearing. The evaluation was performed to evaluate Mother's level of functioning in society, given her cognitive impairment. Mother's overall score on the test placed her in the lower first percentile, meaning that 99 percent of adults in her age group would score higher. The evaluator expressed concern that Mother has weak social skills and has a history of being tricked by others into doing things that can harm herself or others.

{¶13} On the other hand, B.E. was flourishing in the foster home, where he had lived for most of his life. His foster parents were actively working to assist B.E. in exercises and tactics to address his developmental delays. B.E. was also comfortable in that stable and loving home and was bonded with the family.

{¶14} Because B.E. was only two years old at the time of the permanent custody hearing, the guardian ad litem spoke on behalf of the child. She had observed Mother's relationship with B.E. over the past two years and observed a visit as recently as a few weeks before the hearing. She opined that permanent custody was in the child's best interest because Mother lacked the ability to independently care for the child. She testified that Mother did not utilize the parenting skills that she had been taught in the parenting classes. She gave examples from a recent visit about how the instructor of the intensive parenting classes needed to intervene to help Mother feed the child.

{¶15} The custodial history of B.E. did not include any time living in Mother's home. He had spent his entire life in temporary placements and needed a legally secure permanent home. During the two years that this case was pending, Mother engaged in case planning services but remained unable to care for B.E. without assistance from another adult to prompt her and redirect her inappropriate behavior.

{¶16} In addition to Mother's limited ability to provide hands-on care for her child, MCJFS had concerns about Mother's inability to manage her finances to meet even her own basic needs. Mother received benefits through Social Security Disability and had a payee who paid Mother's rent and utilities. The payee provided Mother with a weekly allowance of $75 to pay for her phone, food, and other personal expenses. The caseworker observed that Mother did not appropriately prioritize those funds to pay for groceries and other necessities, but instead

would often spend the funds on luxury items such as her hair and nails. The caseworker referred Mother to a program that could have helped her budget her money, including how to plan meals and grocery shopping for the week, but Mother did not follow through with that program. As recently as the month before the hearing, a neighbor brought Mother food because she had run out of money and had no food in her home.

{¶17} Mother was unable to independently provide B.E. with a stable home and she had no support system of family or friends to help her do so. MCJFS also had been unable to find any suitable relative who was willing and able to provide the child with a permanent home. Therefore, there was no evidence before the court that a legally secure permanent placement would be achieved except through permanent custody.

{¶18} The trial court was also required to consider whether any factors under R.C. 2151.414(E)(7) through (11) applied in the case. The trial court found that R.C. 2151.414(E)(7)(c) applied because Mother had been convicted of two counts of felony child endangering against an older sibling of B.E. under R.C. 2919.22(B). The trial court also found that R.C. 2151.414(E)(11) applied because Mother's parental rights to a sibling of B.E. had been involuntary terminated and Mother failed to rebut the current presumption of her unfitness by presenting "clear and convincing evidence to prove that, notwithstanding the prior termination, [she] can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child."

{¶19} Mother's past parenting ability was directly relevant to the trial court's best interest determination. In this case, Mother had demonstrated an ongoing inability to provide for the basic needs of her children and keep them safe from harm. Although Mother presented evidence that she was making some progress through her intensive parenting classes and

counseling, she failed to present enough evidence that, despite the prior termination of her parental rights, she could now provide her child with a safe and secure home.

**{¶20}** Consequently, the evidence before the trial court supported its conclusion that permanent custody was in the best interest of B.E. Mother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY NOT GRANTING APPELLANT-MOTHER'S MOTION FOR LEGAL CUSTODY WHERE MCJFS FAILED TO USE REASONABLE EFFORTS TO REUNIFY APPELLANT MOTHER WITH HER CHILD[.]

**{¶21}** Mother's second assignment of error is that the trial court lacked authority to terminate her parental rights because the agency failed to use reasonable efforts to reunify her with her child. "'Reasonable efforts' does not mean all available efforts." *In re Lewis*, 4th Dist. Athens No. 03CA12, 2003-Ohio-5262, ¶ 16. "[T]he issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute." *Id*.

**{¶22}** Mother argues on appeal that the intensive parenting classes that MCJFS provided to her were implemented too late in the case to sufficiently address how her cognitive impairments affected her parenting ability. Mother did not raise this argument at the second permanent custody hearing, however. That was the focus of Mother's defense at the first permanent custody hearing. The trial court was apparently persuaded by her defense, denied the first motion for permanent custody, and ordered MCJFS to provide Mother with intensive parenting classes. Although it was months later, Mother began receiving intensive parenting instruction.

**{¶23}** Prior to and during the second permanent custody hearing, Mother did not argue that these intensive classes were implemented too late, that the agency's reunification efforts had been inadequate, or that she needed more time to work on the case plan. In fact, Mother's position at the second hearing was that she had demonstrated through her intensive parenting classes that she had learned how to safely and appropriately care for her child. She called both her counselor and the instructor of the intensive parenting classes as witnesses on her behalf. Because Mother failed to preserve this issue for appellate review and did not argue or demonstrate plain error, her second assignment of error is overruled.

### III.

**{¶24}** Mother's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

TEODOSIO, P. J.
CARR, J.
CONCUR.

APPEARANCES:

PAUL M. GRANT, Attorney at Law, for Appellant.

AMANDA CASALINUOVO, Attorney at Law, for Appellee.

MARY BETH CORRIGAN, Guardian ad Litem.

MICHELE SHERRIN, Guardian ad Litem.