[Cite as *In re M.J.*, 2024-Ohio-1261.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: M.J.

C.A. No.    30907

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 23 07 0622

DECISION AND JOURNAL ENTRY

Dated: April 3, 2024

SUTTON, Presiding Judge.

{¶1}    Appellant, M.J. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her minor child in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2}    Mother has a history with CSB dating back to 2018 because of her long-term methamphetamine use and its impact on her ability to care for her children. She is the biological mother of two older children who are not parties to this appeal. Mother's oldest child was removed from her custody as a toddler because of Mother's substance abuse problems, homelessness, and inability to meet the child's basic needs. The juvenile court ultimately placed Mother's oldest child in the legal custody of a maternal cousin ("Cousin"). For reasons not explained in the record of this case, Cousin adopted that child several years later.

{¶3} The juvenile court removed Mother's second child from her custody shortly after birth because of Mother's ongoing drug problems and inability to meet the child's basic needs. The court later adjudicated the child a dependent child and placed her in the temporary custody of CSB. The child resided in the home of Cousin during the pendency of the case. CSB offered Mother case plan services, but she did not engage in treatment to remedy her substance abuse problems, failed to resolve an outstanding warrant on a felony drug conviction, and did not regularly visit the newborn child. On October 17, 2022, the juvenile court placed Mother's second child in the permanent custody of CSB. Cousin later adopted that child.

{¶4} Mother is also the biological mother of the child at issue in this case, M.J., born July 13, 2023. Shortly after the child's birth, CSB filed a complaint to allege that M.J. was an abused and dependent child because of Mother's continued use of methamphetamine and other illegal drugs, including while she was pregnant with the child. Based on Mother's ongoing drug problems and the prior involuntary termination of her parental rights to M.J.'s older sibling, CSB sought permanent custody as the initial disposition of M.J. The juvenile court removed M.J. from Mother's custody and placed him in the emergency temporary custody of CSB. The agency later placed M.J. in the home of Cousin, along with his two older siblings.

{¶5} Mother was incarcerated shortly after M.J.'s birth. She remained incarcerated for approximately two and a half months before she was released with unspecified felony charges still pending against her. While Mother was incarcerated, she apparently stopped using drugs and remained sober. After her release, she submitted to one drug screen for CSB, which tested negative.

{¶6} M.J. was adjudicated a dependent child, and the case proceeded to the initial dispositional hearing before the juvenile judge. Following an evidentiary hearing, the trial court

found that M.J. could not or should not be returned to the custody of Mother because her parental rights to a sibling of the child had been involuntarily terminated and Mother failed to prove that, despite that prior termination of parental rights, she could provide M.J. with a suitable home. *See* R.C. 2151.414(B)(1)(a); R.C. 2151.414(E)(11). The trial court also found that permanent custody was in the best interest of M.J. R.C. 2151.414(B)(1)(a); R.C. 2151.414(D)(1). Consequently, the trial court terminated parental rights and placed M.J. in the permanent custody of CSB.

{¶7} Mother appeals and raises three assignments of error. The child's father did not appeal the final judgment.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FOUND THAT THE FIRST PRONG OF THE PERMANENT CUSTODY TEST WAS MET UNDER R.C. 2151.414(E)(11) BECAUSE THE COURT CONSIDERED EVIDENCE FROM PRIOR CLOSED PERMANENT CUSTODY CASES.

{¶8} Mother's first assignment of error is that the trial court erred in considering certified journal entries from the juvenile cases of M.J.'s older siblings. This Court must initially emphasize that Mother did not raise any objection to the admission of this evidence at the hearing and has forfeited all but plain error on appeal. *See In re L.A.*, 9th Dist. Summit No. 30572, 2023-Ohio-1877, ¶ 23. Mother has not articulated a plain error argument on appeal, however.

{¶9} Moreover, Mother relies solely on case law that does not support her argument because it analyzed a legally distinguishable subsection of R.C. 2151.414(E). Termination of parental rights under R.C. 2151.414(E) requires a trial court to conclude that the child cannot or should not be placed with either parent if it finds that the agency established, by clear and convincing evidence, that one of several enumerated factors exists in the case. In M.J.'s case, the

trial court found that the child could not or should not be returned to Mother's custody based on the circumstances set forth in R.C. 2151.414(E)(11), which requires proof that:

> The parent has had parental rights involuntarily terminated with respect to a sibling of the child * * * , and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

{¶10} Mother's argument that the trial court erred in considering evidence from prior cases relies solely on this Court's reasoning in *In re Q.C.*, 9th Dist. Summit Nos. 29988, 29989, and 29990, 2021-Ohio-3993, ¶ 19-21, which reviewed a trial court's finding that the children could not or should not be returned to the home based only on a finding under R.C. 2151.414(E)(1), a completely different subsection of R.C. 2151.414(E). R.C. 2151.414(E)(1) requires the agency to prove that:

> Following the placement of the child outside the child's home * * * the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.

{¶11} The legal reasoning in *In re Q.C.* focused only on the operative language of R.C. 2151.414(E)(1). As quoted above, that subsection of R.C. 2151.414(E) requires proof that a parent has failed to substantially remedy the conditions of the home "*[f]ollowing the placement of the child outside the child's home[.]*" (Emphasis added.) *Id*. at ¶ 19. This Court interpreted the "plain and unambiguous language" of subsection (E)(1), as it had before, to apply "only to the reunification efforts of a parent after the children are removed from the home in the current case." *Id*. at ¶ 20. Because the trial court had relied on evidence about the mother's drug use from prior juvenile cases, which predated the removal of her children from the home in the case on appeal, this Court reversed the trial court's permanent custody judgment based on R.C. 2151.414(E)(1). *Id*. at ¶ 21.

**{¶12}** In this case, CSB sought permanent custody of M.J. based only on the circumstances set forth in R.C. 2151.414(E)(11), due to the prior involuntary termination of Mother's parental rights to one of the child's siblings. *See* R.C. 2151.414(B)(1)(a); R.C. 2151.414(E)(11). Mother asks this Court to interpret the language of R.C. 2151.414(E)(11) to also preclude the trial court from relying on evidence from Mother's prior juvenile cases, but she fails to point to any legal authority or similarity between the operative language of R.C. 2151.414(E)(1) and R.C. 2151.414(E)(11) to support her argument.

**{¶13}** The language of subsection (E)(11) is entirely different from subsection (E)(1) and does not confine the court's consideration to the facts of the current case. The plain language of R.C. 2151.414(E)(11), as quoted above in paragraph 9, focuses not on the parent's progress in the current case, but on her past juvenile court history, to establish that she is an unfit parent. In fact, to prove the specific circumstances set forth in R.C. 2151.414(E)(11), it was necessary for CSB to rely on evidence from the sibling's prior juvenile case to prove that Mother's parental rights to M.J.'s sibling had been involuntarily terminated. *See* R.C. 2151.414(E)(11); *In re S.S.*, 9th Dist. Summit No. 28921, 2018-Ohio-2279, ¶ 12.

**{¶14}** Evidence about Mother's past juvenile court history and the severity of her long-standing parenting problems was directly relevant to both prongs of the permanent custody test and the trial court's consideration of that evidence was not precluded by any language set forth in R.C. 2151.414(E)(11). R.C. 2151.414(B)(1)(a); 2151.414(E)(11); 2151.414(D)(1)(e) (requiring the trial court to again consider the prior involuntary termination of parental rights in its best interest determination). Because Mother has failed to cite any controlling or persuasive authority to support her argument, her first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FOUND THAT THE FIRST PRONG OF THE PERMANENT CUSTODY TEST WAS MET UNDER R.C. 2151.414(E)(11) BECAUSE MOTHER PROVIDED CLEAR AND CONVINCING EVIDENCE TO PROVE THAT SHE CAN PROVIDE A LEGALLY SECURE PLACEMENT AND ADEQUATE CARE FOR THE HEALTH, WELFARE, AND SAFETY OF HER CHILD.

{¶15} Given that the trial court did not err in considering the juvenile records from the case involving M.J.'s older sibling, the evidence was not disputed that Mother's parental rights to a sibling of M.J. were involuntarily terminated in a prior juvenile case. Under the original version of R.C. 2151.414(E)(11), proof of a prior involuntary termination of parental rights to a sibling of the child, in and of itself, established the parent's unfitness under the first prong of the permanent custody test. *In re G.L.S.*, 9th Dist. Summit Nos. 28874 and 28893, 2018-Ohio-1606, ¶ 19, citing former R.C. 2151.414.

{¶16} "Effective April 7, 2009, however, [R.C.] 2151.414(E)(11) now permits 'the parent to essentially rebut a presumption that, because her parental rights were involuntarily terminated as to her other children, she is not a suitable parent for additional children.'" *In re A.H.*, 9th Dist. Lorain No. 23CA012001, 2024-Ohio-502, ¶ 17, quoting *In re E.A.*, 9th Dist. Medina No. 12CA0059-M, 2012-Ohio-5925, ¶ 14. "Mother had the burden to rebut the presumption of parental unfitness by clear and convincing evidence." *Id.*, quoting R.C. 2151.414(E)(11). Specifically, under the current version of R.C. 2151.414(E)(11), in addition to finding that Mother previously had her parental rights terminated as to a sibling of M.J., the trial court was also required to find that Mother failed to prove, by clear and convincing evidence that, "notwithstanding the prior termination, [she] can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child." R.C. 2151.414(E)(11).

{¶17} Through her second assignment of error, Mother asserts that she presented clear and clear and convincing evidence at the hearing that she "can" provide a legally secure permanent placement for M.J. Most of her argument is based on an unsupported premise: that because the statute's requirement that she prove that she "can" provide her child with a stable placement is not coupled with an explicit time requirement, she was not required to demonstrate the ability to provide her child with a legally secure permanent placement at the time of the hearing, but only an ability to do so "at some point." Mother cites no authority to support such an interpretation of R.C. 2151.414(E)(11). Furthermore, this Court has consistently interpreted this provision to require a parent to present clear and convincing evidence of his or her current ability, at the time of the hearing, to provide an appropriate home for the child. *See, e.g.*, *In re A.H.* at ¶ 18; *In re Z.S.*, 9th Dist. Summit No. 29887, 2021-Ohio-2022, ¶ 31; *In re B.E.*, 9th Dist. Medina No. 18CA0074-M, 2019-Ohio-1040, ¶ 19.

{¶18} Mother did not present any evidence that, at the time of the hearing, she was able to provide M.J. with a stable home. At the hearing, Mother testified that, for the first time in several years, she was finally serious about getting her life together and that she "just want[ed] to be given the opportunity" to show that she could achieve and maintain sobriety for herself and her children. She presented no evidence to dispute the evidence presented by CSB that she had not yet achieved sustained sobriety or stability in her life.

{¶19} CSB presented evidence that, at the beginning of this case, Mother was actively using drugs. She admitted to the caseworker that she had been using intravenous methamphetamine almost daily for five to six years, and that she never participated in drug treatment during that period. Mother also told her that she used methamphetamine throughout her pregnancy with M.J. and that she had reduced her usage to a few times a week only because she

had trouble obtaining the drug. The caseworker and guardian ad litem testified that, although Mother purported to have been sober for three months at the time of the hearing, they believed that her sobriety was the result of her recent incarceration. The guardian ad litem opined that Mother still needed to engage in intensive drug treatment and sober support services for a period of several months and then be able to demonstrate an extended period of sobriety after completing treatment. By the time of the hearing, Mother was also unemployed, lacked stable housing, and was facing unresolved felony charges from 2019 and 2023.

{¶20} Mother emphasized at the hearing and again on appeal that she had secured stable housing in a sober house. The caseworker testified that she had never heard of that sober house before and explained that it was not run by an agency approved by CSB. Given that Mother had never engaged in an intensive drug treatment program, the caseworker and guardian ad litem believed that she needed a higher level of monitoring to achieve and maintain sobriety. They were concerned that the sober house was run by one person who ran multiple locations by herself, did not require residents to submit to drug testing, and did not otherwise monitor their behavior or verify that they were maintaining sobriety.

{¶21} Mother has failed to demonstrate that the trial court erred by concluding that she failed to present clear and convincing evidence to demonstrate that, despite the prior termination of her parental rights to a sibling of M.J., she had the ability to provide M.J. with a safe and stable home and meet all his needs. Mother's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

> THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT FOUND IT WAS IN THE BEST INTEREST OF THE CHILD TO GRANT PERMANENT CUSTODY TO [CSB] BECAUSE THAT DECISION WAS NOT IN THE BEST INTEREST OF THE CHILD, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AND WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

**{¶22}** Finally, Mother challenges the trial court's determination that permanent custody was in the best interest of M.J. In addition to finding that the first prong of the permanent custody test was satisfied under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(E)(11), the trial court was required to find, by clear and convincing evidence, that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**{¶23}** In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

**{¶24}** In reviewing the trial court's determination that permanent custody was in the best interest of M.J., this Court focuses primarily on the best interest factors set forth in R.C. 2151.414(D). *In re M.S.*, 9th Dist. Summit Nos. 30506 and 30515, 2023-Ohio-1558, ¶ 25. In making its best interest determination, the trial court was required to consider the statutory best interest factors, which include: the interaction and interrelationships of the child, his wishes, the custodial history of the child, his need for permanence and whether that can be achieved without

a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11. Of relevance here, Mother's parental rights to a sibling of M.J. had been involuntarily terminated and she failed to present clear and convincing evidence that, "notwithstanding the prior termination, [she] can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child." R.C. 2151.414(E)(11).

{¶25} Mother's interaction and interrelationship with M.J. was limited to two supervised visits during this case because Mother was incarcerated during the first two and a half months of the child's life. By the time of the hearing, Mother had not developed a close bond with her young child.

{¶26} Because M.J. was an infant and unable to express his wishes, the guardian ad litem spoke on his behalf. She expressed concern that Mother had been struggling with drug addiction for many years and had yet to begin substance abuse treatment or demonstrate a sustained period of sobriety. She opined that Mother had maintained a brief period of sobriety only because she recently had been incarcerated. The guardian ad litem further emphasized that Mother had no ability to provide for her own basic needs, noting that she had been unemployed for the past five years, was still trying to gather documentation to get a state identification and social security card, and still had unresolved felony charges, the outcome of which was unknown. The guardian ad litem opined that permanent custody was in the best interest of M.J.

{¶27} M.J. had lived in two different temporary placements during his young life and needed a legally secure placement. CSB had been unable to find any relatives who were willing to take legal custody of the child, and Mother was unable to provide the child with a legally secure permanent placement at that time.

**{¶28}** Finally, as part of its best interest determination, the trial court was required to again consider that Mother's parental rights to an older sibling of M.J. had been involuntarily terminated and Mother had failed to demonstrate that, despite that prior termination, she was able to provide this child with a legally secure permanent placement and otherwise was able to provide for the child's basic needs. After five to six years of regular drug use and instability in her life, Mother was still unemployed, lacked stable housing, was facing an unresolved felony charge from several years ago as well as a more recent felony charge, and she had failed to begin drug treatment to address her long-standing problem of regular methamphetamine use.

**{¶29}** Mother has failed to demonstrate that the trial court lost its way by concluding that permanent custody was in the best interest of M.J. *See Eastley* at ¶ 20. Mother's third assignment of error is overruled.

### III.

**{¶30}** Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period

for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.


_____
BETTY SUTTON
FOR THE COURT


CARR, J.
HENSAL, J.
CONCUR.


APPEARANCES:

JAYSEN W. MERCER, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.