[Cite as *In re S.A.-C.*, 2017-Ohio-9297.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: S.A.-C.
      S.A.-C.

C.A. No.     28704


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 14-11-744
                   DN 14-11-745

## DECISION AND JOURNAL ENTRY

Dated: December 29, 2017

CARR, Judge.

{¶1} Appellant, Michael C. ("Father"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that denied his motion for legal custody and instead terminated his parental rights and placed two of his minor children in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2} Father is the biological father of several children, including the two at issue in this appeal, both of whom have the initials S.A.-C.: a girl, born October 18, 2000; and a boy, born October 6, 2006. The children's mother ("Mother") is no longer a party to this case because she died of pneumonia during the trial court proceedings.

{¶3} Several years ago, these children were removed from the custody of Mother and placed with Father because Mother had paranoid schizophrenia and was not consistently

engaging in counseling and medication management. When the current case began, the children had been in the custody of Father for several years.

{¶4} On November 5, 2014, police removed the girl from Father's custody following an incident of domestic violence between Father and the girl. Father and the children were also living with Father's girlfriend and two other minor children. The boy was included in the complaint and later adjudicated a dependent child. The boy was not home during the domestic violence incident or otherwise involved in any conflict with Father, so he was permitted to remain in Father's custody under an order of protective supervision.

{¶5} During March 2015, the boy was also removed from Father's custody. Father's girlfriend had alleged that Father had a substance abuse problem and that she had been the primary caretaker for the boy but no longer wanted to care for him. Father admitted that he had been using cocaine but he refused to obtain a substance abuse assessment or engage in any treatment.

{¶6} The case plan required that both children engage in counseling to address their behavioral problems. The children had informed their counselors that Father's girlfriend was mean to them and that she had inappropriately disciplined them on numerous occasions. Father recognized that there was a strained relationship between his girlfriend and these two children, yet he continued his romantic relationship with her.

{¶7} During the first year of this case, Father did not comply with the reunification requirements of the case plan and did not maintain consistent contact with CSB, the trial court, or the children. Mother, on the other hand, visited the children regularly, stabilized her mental health through regular counseling and medication management, and complied with other aspects of the case plan. Consequently, CSB's reunification efforts focused on Mother. Temporary

custody was extended because Mother was making significant progress on the case plan. Mother's interaction with the children had progressed to unsupervised visits and CSB was planning to return the children to her custody.

{¶8} On March 23, 2016, however, Mother unexpectedly died of pneumonia. Reunification with Mother was no longer possible and, 16 months into this case, Father was not consistently visiting the children and had not complied with most of the requirements of the case plan. On May 26, 2016, CSB moved for permanent custody. Shortly afterward, Father informed the juvenile court that he was "ready to step up to the plate" and begin working toward reunification with his children.

{¶9} The parties agreed to extend the next review hearing and the permanent custody hearing was ultimately extended for several months. During that time, Father resumed visitation with his children and began working on some of the reunification requirements of the case plan. Father filed an alternative motion for legal custody of both children.

{¶10} Following a hearing on the competing dispositional motions, the trial court terminated Father's parental rights and placed the children in the permanent custody of CSB. Father appeals and raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT'S DECISIONS DENYING FATHER'S MOTION FOR LEGAL CUSTODY AND GRANTING [CSB'S] MOTION FOR PERMANENT CUSTODY, THEREBY TERMINATING FATHER'S PARENTAL RIGHTS, WERE NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE; WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE; AND/OR CONSTITUTED AN ABUSE OF DISCRETION.

{¶11} Father's sole assignment of error is that the trial court erred by placing his children in the permanent custody of CSB rather than in his legal custody. Before a juvenile

court may terminate parental rights and award permanent custody of children to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the children are abandoned; orphaned; have been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; they or another child in a parent's custody have been adjudicated abused, neglected, or dependent on three separate occasions; or they cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the children, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶12} The trial court found that CSB had satisfied the first prong of the permanent custody test for several alternative reasons, and Father challenges some of those findings. To demonstrate reversible error, however, he must demonstrate not only that the trial court committed error but also that he suffered prejudice as a result. *See Lowry v. Lowry*, 48 Ohio App.3d 184, 190 (4th Dist.1988), citing *Gries Sports Ents., Inc. v. Cleveland Browns Football Co., Inc.*, 26 Ohio St.3d 15, 28 (1986). As long as one of the trial court's first prong findings was supported by clear and convincing evidence, Father suffered no prejudice from any error in the trial court's alternative findings. *See, e.g., In re S.C.*, 9th Dist. Summit No. 27676, 2015-Ohio-2623, ¶ 30; *In re R.H.,* 9th Dist. Lorain Nos. 11CA010002, 11CA010003, 2011–Ohio–6749, ¶ 13–14.

{¶13} The trial court found, among other reasons, that CSB satisfied the first prong of the permanent custody test because the children had been in its temporary custody for more than 12 months of a consecutive 22-month period. Father does not challenge that finding, which was

fully supported by the record. Therefore, we need not reach his challenges to the trial court's alternative first prong findings.

{¶14} Next, Father challenges the trial court's finding that permanent custody was in the best interest of the children. Because the trial court's decision whether to place the children in the legal custody of Father was also based on the best interest of the children, "this Court typically conducts a single 'best interest' review of the trial court's decision to place the child[ren] in the permanent custody of the agency rather than in the legal custody to a relative." *In re I.A.*, 9th Dist. Summit No. 26642, 2013-Ohio-360, ¶ 10, quoting *In re T-G.M.*, 9th Dist. Summit No. 25858, 2011-Ohio-3940, ¶ 13.

{¶15} If permanent custody was in the children's best interest, legal custody to Father necessarily was not. "'Consequently, this Court will review the factors set forth in R.C. 2151.414(D) in reviewing the [best interest] decision of the trial court * * *.'" *Id.* When determining the children's best interest under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the children, their wishes, the custodial history of the children, and their need for permanence in their lives. *See In re R.G.,* 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11.

{¶16} Throughout this case, Father's interaction with the children had been limited to weekly visits that he attended only sporadically. He would sometimes miss visits for several months at a time. Father argues on appeal that he missed several visits because they were scheduled on Mondays and there were many Monday holidays, including Christmas and New Year's Day. The caseworker explained, however, that it was Father who had scheduled one-hour visits on Mondays, even though he could have visited on another day and/or for longer than one hour. Moreover, the caseworker had offered Father the opportunity to make up visits that were

scheduled on holidays, but he never did. Father missing visits would only exacerbate the behavioral problems of the children, particularly when they discovered that Father had missed one visit because he was on vacation with his girlfriend and other children.

{¶17} At one point during the case, Father's visits had expanded to community locations, but they were returned to the visitation center after CSB learned that Father's girlfriend had attended some of the visits in violation of the case plan. Father's visits were not expanded again because he did not demonstrate an ability to appropriately care for his children. For example, Father was unavailable for visits or phone calls at significant times in the children's lives such as holidays and birthdays. After Mother died, Father did not call the children or reach out to them to offer any emotional support. He attended Mother's funeral but only caused the children additional stress by pressuring them to choose between him and their foster parents.

{¶18} The children had resided in different foster homes during these proceedings but they visited each other regularly. They had adjusted well to the structure and stability of the foster homes. By the time of the hearing, the boy had lived with the same family for two years and was very comfortable in that home. The foster parents of the boy were interested in adopting him if CSB received permanent custody.

{¶19} The girl suffers from serious behavioral problems and needs ongoing counseling and structure. She had been in the same foster home for approximately one year, had developed a good relationship with the family, and was doing well in that stable environment.

{¶20} Both children had expressed their desire to return to Father's custody, but the boy had vacillated between wanting to live with Father or the foster family. Moreover, the children did not want to live with Father's girlfriend, with whom they had a distant and sometimes hostile relationship. Father admitted that the girlfriend also did not want to live with these children.

{¶21} Father testified that he was no longer romantically involved with the girlfriend, but the trial court believed evidence that CSB presented to demonstrate that their relationship had not ended. Specifically, Father and the girlfriend had recently taken two vacations together, one to Orlando and one to Cancun, and Father gave the girlfriend a ring on one of those trips. Father testified that the ring was merely a friendship ring, but he had told his children that it was an engagement ring.

{¶22} Moreover, Father had not substantially complied with the reunification requirements of the case plan. Because Father was not prepared to provide the children with a stable home, the children's guardians ad litem opined that permanent custody was in their best interest.

{¶23} By the time of the hearing, these children had lived in temporary placements for nearly two years. CSB had been unable to find any suitable relatives who were willing and able to provide them with a permanent home. Although Father asserts that he was prepared to provide his children with a stable, permanent home, his argument is not supported by the record. Father had obtained housing shortly before the permanent custody hearing, but the caseworker had not had an opportunity to inspect the home. During the two years leading up to the hearing, Father had not consistently visited his children and he had only minimally complied with any of the other requirements of the case plan. He offered several excuses for failing to comply with the case plan requirements, most of which were contradicted by CSB's evidence at the hearing.

{¶24} The trial court reasonably concluded that Father had spent the past two years putting his own needs ahead of working on reunification with these two children. For example, Father did not work with the assigned caseworker because he said that he did not like her. Father also explained that he had stopped attending counseling because he owed the facility

approximately $140 and could not afford to pay what he owed. Nevertheless, he admitted that he had taken two expensive trips and bought his girlfriend a ring during this case. For the Orlando trip alone, he admitted that he paid $600 in airfare and stayed in a hotel suite while there.

{¶25} Consequently, Father has failed to demonstrate that the trial court erred in placing these children in the permanent custody of CSB. Father's assignment of error is overruled.

## III.

{¶26} Father's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
CALLAHAN, J.
CONCUR.


APPEARANCES:

JAMES K. REED, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.