[Cite as *In re A.M.*, 2024-Ohio-6091.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

IN RE: A.M.
    J.M.

C.A. Nos.     24AP0016
                  24AP0017

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE Nos.    2022 JUV-C 000225
              2022 JUV-C 000226

DECISION AND JOURNAL ENTRY

Dated: December 31, 2024

FLAGG LANZINGER, Judge.

{¶1} Appellant Mother appeals the judgment of the Wayne County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her children in the permanent custody of Wayne County Children Services Board ("CSB" or "the agency"). This Court affirms.

I.

{¶2} Mother and Father are the biological parents of A.M., born August 6, 2015; and J.M., born July 3, 2016. Although the parents remained married throughout the cases below, they did not live together and had ended their romantic relationship.

{¶3} In February 2022, while the children were living with Mother, Mother was taken to the hospital after having suicidal ideations. There, she tested positive for methamphetamine and

amphetamines. She had previously been prescribed medications for various mental health diagnoses, but she was not taking those.

{¶4} When CSB became aware of these issues, the agency investigated to determine if Father was a suitable caregiver for the children. As a result, CSB learned that Father had criminal and substance abuse histories, was living in a home with no working utilities, lacked funds to meet the children's basic needs, and had recently violated his probation and was potentially facing incarceration. While working with the family informally, CSB placed the children in the maternal grandmother's ("Grandmother") home with Father's agreement.

{¶5} After Mother was released from the hospital, she and her boyfriend were stopped by the police after a highspeed chase. The police found drugs, drug paraphernalia, a firearm, and ammunition in the car. Mother was arrested on an outstanding warrant arising out of a 2021 theft case. The children remained in Grandmother's home during that time.

{¶6} In March 2022, Grandmother informed CSB that she had to return to work and would be unable to continue to provide care for the children because she could not afford daycare costs. The agency obtained an emergency order of temporary custody of the children and filed complaints alleging that A.M. and J.M. were neglected and dependent children.

{¶7} Mother and Father waived their rights to an adjudicatory hearing and stipulated that the children were dependent. The parents later waived their rights to a dispositional hearing, stipulating to placement of the children in CSB's temporary custody and the adoption of the agency's case plan as an order of the court. Pursuant to the case plan, both parents were required to obtain psychological and substance abuse assessments and follow all recommendations, and demonstrate the ability to provide for the children's basic needs. Mother was also required to complete a domestic violence assessment and follow all recommendations.

{¶8} Over the next 21 months, the juvenile court held eight review or interim dispositional hearings. On two occasions, CSB had filed final dispositional motions, including a motion for legal custody to relatives and a first motion for permanent custody. Both times, however, the agency withdrew its motions, and the parties agreed to a first and second six-month extension of temporary custody.

{¶9} CSB moved a second time for permanent custody 23 months into the cases. Mother filed a motion for legal custody to Mr. and Mrs. H., paternal relatives of the children. At the beginning of the final dispositional hearing, Mother withdrew her legal custody motion because Mr. and Mrs. H. failed to appear and had not executed a statement of understanding for legal custody. After the hearing, the juvenile court issued a judgment, terminating all parental rights and awarding permanent custody of A.M. and J.M. to CSB. Mother timely appealed, raising two assignments of error for review. This Court consolidates the assignments of error to facilitate review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY OF THE MINOR CHILDREN TO [CSB], FINDING PERMANENT CUSTODY IN THE BEST INTEREST OF THE MINOR CHILDREN, PURSUANT TO R.C. 2151.414.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY OF THE MINOR CHILDREN TO [CSB], FINDING THE CHILDREN COULD NOT BE RETURNED TO [MOTHER] WITHIN A REASONABLE PERIOD OF TIME, PURSUANT TO R.C. 2151.414.

{¶10} Mother argues that the juvenile court's judgment is against the manifest weight of the evidence. This Court disagrees.

**{¶11}** In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

**{¶12}** Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). The best interest factors include: the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 2009-Ohio-6284, ¶ 11 (9th Dist.). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

First prong considerations

{¶13} Mother appears to argue that the juvenile court erred by finding that the children cannot be placed with either parent within a reasonable time or should not be placed with either parent, as set out in R.C. 2151.414(B)(1)(a). That provision requires a determination that one of the factors in subsection (E) applies. Mother cites R.C. 2151.414(E)(4), (10), (12), (13), and (16). None of those provisions are relevant to these cases, however.

{¶14} As to the first prong of the permanent custody test, CSB alleged in its motion that the children had been in the agency's temporary custody for 12 or more months of a consecutive 22-month period, pursuant to R.C. 2151.414(B)(1)(d). The agency did not allege any other first prong ground. The juvenile court found that CSB proved that A.M. and J.M. were in the agency's temporary custody for the requisite time. Mother concedes that CSB met its burden of proof as to that allegation, and the record supports the juvenile court's finding. The agency established its sole first prong allegation, which is all that is necessary to satisfy the first prong of the permanent custody test. *See In re S.A.-C.*, 2017-Ohio-9297, ¶ 12 (9th Dist.). Accordingly, this Court need not consider Mother's challenge regarding any other R.C. 2151.414(B)(1) first prong ground. Moreover, we will not address an evidentiary challenge regarding a fact that was neither alleged by CSB nor found by the trial court.

Best interest of the children

{¶15} A.M. and J.M. were in the parents' legal custody until CSB removed them when they were six and five years old, respectively. At the time of the permanent custody hearing, the children were eight and seven years old and had been in CSB's temporary custody for 26 months. The children were in four different placements during that time, although they always remained together.

**{¶16}** At the time of the hearing, A.M. and J.M. had been living in a kinship foster home for nine months. The foster parents had previously adopted the children's half-sister, an older biological child of Mother. A.M. and J.M. were comfortable in that home and closely bonded with the foster parents. The caseworker and guardian ad litem both noted that the children also share a bond with Mother and Father.

**{¶17}** While Mother testified that A.M. wants to live with her, and J.M. wants to live with Father, the guardian ad litem opined that permanent custody was in the children's best interest. The guardian reported that Father had stopped participating in court proceedings more than six months earlier, had not visited with the children during the past year, and had relapsed and was again testing positive for methamphetamine and amphetamines. The guardian ad litem reported that Mother was in prison and unable to provide a home for the children.

**{¶18}** After more than two years in agency care, the children required permanence. Neither parent was able to provide the necessary stability for A.M. and J.M.

**{¶19}** Father had not resolved his substance abuse issues. While he completed a psychological evaluation and parenting education, he refused to engage in the additional services recommended by those providers because he thought they were unnecessary. The caseworker and guardian ad litem were unable to describe the current status of Father's home because he had stopped responding to their attempts to contact him.

**{¶20}** Mother could not provide for the children's basic needs, as she was serving a three-year prison term. Mother had a new baby during these cases and was pregnant with another child at the time of the hearing. While she had applied to be able to keep her expected infant with her in prison, she understood that it was not possible to have A.M. and J.M. with her during her incarceration.

{¶21} While Mother testified that she completed her case plan objectives, the caseworker disagreed. Mother completed her substance abuse assessment which recommended individual counseling. Although she reported engaging in counseling, Mother never signed a release of information to enable the caseworker to speak with the counselor to discuss Mother's progress. Mother also completed a domestic violence assessment. That too recommended individual counseling. Mother only attended a few counseling appointments. She never completed her psychological assessment despite multiple referrals by CSB to facilitate that evaluation.

{¶22} Mother was inconsistent with visiting the children. She attended 20 of 42 in-person visits and 15 of 18 Zoom visits. CSB removed Mother from the visitation schedule six times for failing to comply with agency policy regarding confirming visits and arriving no later than 15 minutes after the visit was to have started. The agency reinstated Mother's visits upon each of her six requests, but sometimes Mother waited a couple of months to seek reinstatement. In addition to the six removals for violating the visitation center policy, CSB removed Mother from the visitation schedule another three times due to her various periods of incarceration during the cases.

{¶23} There were no relatives who were willing or able to accept placement or custody of the children. The agency kinship department conducted home studies of five caregivers proposed by the parents. Grandmother and some paternal cousins were approved but withdrew their requests for consideration. The agency denied the home studies of Mr. and Mrs. H. and Mother's stepfather ("Grandfather"). Although CSB automatically disapproved Grandfather's home because Mother was living there when the home study began, the agency had other concerns about Grandfather's home. Specifically, a computer background check indicated Grandfather may have had some criminal history and failed to follow a school safety plan involving one or more of his own biological children. An agency kinship department caseworker testified that he attempted to

contact Grandfather for an interview to discuss these concerns, but Grandfather did not respond. Grandfather moreover did not challenge the agency's denial of his home study.

**{¶24}** Mother testified that, if the juvenile court awarded her legal custody, she would place them with Father or Grandfather. As discussed above, neither home was a viable placement option for the children.

**{¶25}** Based on a thorough review of the record, this is not the exceptional case in which the trier of fact clearly lost its way and created a manifest miscarriage of justice by awarding permanent custody of A.M. and J.M. to CSB. After more than two years, neither parent could provide a safe, stable, and appropriate home for the children. Accordingly, the juvenile court's judgment terminating Mother's and Father's parental rights and awarding permanent custody of the children to CSB is not against the manifest weight of the evidence.

Reasonable efforts

**{¶26}** Mother argues that the juvenile court erred by finding that CSB used reasonable reunification efforts in these cases to enable her to reassume legal custody. She failed, however, to enunciate an assignment of error raising this issue for the Court's consideration, as required by App.R. (16)(A)(3). Nevertheless, Mother's argument is not well taken.

**{¶27}** R.C. 2151.419(A)(1) requires the juvenile court to determine whether the agency has used reasonable reunification efforts at any hearing at which the court removes a child from the home or continues the child's removal from home. It is well settled that "the statute imposes no requirement for such a determination at the time of the permanent custody hearing unless the agency has not established that reasonable efforts have been made prior to that hearing." (Internal quotations omitted.) *In re L.R.*, 2019-Ohio-2305, ¶ 14 (9th Dist.), quoting *In re A.C.-B.*, 2017-Ohio-374, ¶ 22 (9th Dist.); *see also In re C.F.*, 2007-Ohio-1104, ¶ 41-43 (concluding that a

reasonable efforts determination is necessary at a permanent custody hearing only if the agency has not demonstrated its use of reasonable efforts prior to that time).

{¶28} In this case, the juvenile court found at every hearing required by statute that CSB had used reasonable reunification efforts. In fact, the juvenile court made no fewer than 14 reasonable efforts determinations throughout the cases. Mother waived her right to a hearing and stipulated to those findings on multiple occasions. Where a magistrate issued orders or decisions finding that CSB had used reasonable efforts, Mother failed to file either motions to set aside or objections challenging those findings. She has, therefore, forfeited this issue on appeal except for a claim of plain error. *See In re B.H.*, 2021-Ohio-4152, ¶ 23 (9th Dist.). As Mother failed to provide this Court with transcripts of the hearings at which the trial court found that the agency had used reasonable efforts, we must presume regularity as to those determinations. *See In re L.R.*, 2019-Ohio-2305, ¶ 18 (9th Dist.).

Conclusion

{¶29} Mother has not demonstrated that the juvenile court's award of permanent custody of A.M. and J.M. to CSB is against the manifest weight of the evidence. Mother's first and second assignments of error are overruled.

III.

{¶30} Mother's two assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JILL FLAGG LANZINGER
FOR THE COURT

SUTTON, P. J.
CARR, J.
CONCUR.

APPEARANCES:

JACQUELYN M. DOSSI, Attorney at Law, for Appellant.

ANGELA POTH-WYPASEK, Prosecuting Attorney, and ALEXANDER J. MONTVILAS, Assistant Prosecuting Attorney, for Appellee.